McGEE et al. v. McGEE.

No. 6113.

Court of Civil Appeals of Texas. Amarillo.

Oct. 23, 1950.

Rehearing Denied Nov. 27, 1950.

Crenshaw, Dupree & Milam, Lubbock, James W. Witherspoon, Hereford, for appellants.

Campbell & Brock, Lubbock, for appellee.

STOKES, Justice.

This action was instituted by the appellee, Claude McGee, on August 22, 1949,

against the appellants, .P. E. Roddy and Perry J. Leverett, to recover $2120.07, the value of 15 bales of cotton which appellee alleged he sold and delivered to Roddy and Leverett. He alleged that Roddy and Leverett issued and·delivered to him·their cheque or draft on a bank in Lubbock for the agreed purchase price of the cotton and that, although they had received the cotton and appropriated it to their own use, they instructed the bank not to honor or pay the cheque when it was presented. He alleged that the bank observed the instruction of Roddy and Leverett and, when the cheque was presented to it, payment thereof was denied. He prayed for judgment against Roddy and Leverett, jointly and severally, for damages in the sum of $2120.07, the agreed value· of the cotton, together with 6% interest thereon from February 3, 1949, the alleged date of the sale, for costs of suit and general relief.

On September 7, 1949, appellants Roddy and Leverett requested leave of the court to implead the appellant Taft McGee as a party defendant, which request was granted by order of the court entered on the same date. Appellants Roddy and Leverett then filed their answer to appellee's cause of action, consisting of a general denial and a cross-action over and against the appellant Taft McGee. In their cross-action, they admitted they agreed to purchase the 15 bales· of cotton from appellee and to pay him therefor the sum of $2120.07. They alleged, however, that appellee represented and warranted to them that he was the owner of the cotton and that, shortly after they purchased it, they were notified that appellee·did not own the cotton and that the compress where it was stored refused to deliver it to them upon the compress' warehouse receipts therefor which they had received from appellee. They further alleged that they notified appellee of the refusal of the compress and, after waiting several days and not having heard from him, they delivered the purchase price of the cotton to Taft McGee upon his warranty that he, and not Claude McGee, owned the cotton. They alleged further that, as a matter of fact, appellee did not own the cotton at the time he sold it to

them and that they were in the position of stake-holders and, as such, were entitled to have adjudicated in this cause the controversy between·Taft McGee and appellee as to the ownership of the cotton. ·:

·' The record shows that Taft McGee was the owner of the Hereford gin and that appellee was employed by him as manager thereof during the year 1947 and until October '1948. As compensation for his services during that time, appellant, Taft McGee, agreed to pay appellee 49% of the net earnings of the gin. In·October 1948, the, gin was incorporated with a capital stock of $40,000, of which appellee became the owner of one-fourth, and he continued as manager of the gin, at a·wage of 25% of the net earnings until December 17, 1948, when his employment and connection with the gin company and Taft McGee terminated.

On November 14, 1949, appellant Taft McGee filed his answer and was joined in it by the Hereford Gin Company, a corporation, as intervenor. This pleading was amended on March 6, 1950, and in the amended answer they made a general denial of the allegations of the appellee and pleaded specially that the cotton warehouse receipts delivered by appellee to Roddy and Leverett belonged to the Hereford Gin Company; that they never at any time belonged to the appellee; that the appellee was, at all times during the transactions involved, only an employee of the Hereford Gin Company and had no right or authority to assert title to either the cotton or its proceeds nor to the warehouse receipts evidencing the same; that neither the cotton nor the warehouse receipts were ever at any time lawfully transferred or assigned by the Hereford Gin Company to appellee; and that the appellee was, therefore, not entitled to recover of Roddy and Leverett, the Hereford Gin Company, nor Taft McGee the proceeds of the sale of the cotton.

Taft McGee and the gin company included in their answer an offset and counterclaim against appellee in which they alleged that, in the year 1947, Taft McGee arranged with the West Texas Cotton Oil Company of Plainview to advance loans

to him when they were needed in the gin business; that it was agreed between Taft McGee and appellee that all moneys belonging to the gin-account would be placed in the Hereford State Bank and all accounts and business would be kept in, and transacted through, that bank and that all such funds pertaining to the operations of the gin would belong to Taft McGee until the net profits were ascertained. They further alleged that, without the knowledge or consent of Taft McGee, appellee represented to the West Texas Cotton Oil Company that he was acting for Taft McGee and procured from that company the sum of $3000 which he deposited in the First National Bank of Hereford and appropriated to his own use, instead of depositing it in the Hereford State Bank to the account of the Hereford Gin Company, as it was his duty to do. They further alleged that, thereafter, appellee procured the additional sum of $2000 from the West Texas Cotton Oil Company in the same manner which he likewise appropriated to his own use and benefit and kept both of these transactions secret and unknown to his employer Taft McGee. They further alleged that the gin operated at a loss of $3200 in the year 1947 and that the loss was caused by the unlawful withdrawal of its funds by appellee; that, if he had not withdrawn such funds, the gin would have made a profit during that year of $1800, of which appellee would have been entitled to approximately $900; and that Taft McGee was therefore entitled to judgment against appellee on these items for the sum of $4100.

The Hereford Gin Company and Taft McGee further pleaded that, during the year 1948, appellee took and converted to his own use one bale of cotton belonging to G. H. Whitaker of the value of $100, and that Taft McGee paid Whitaker that amount. They further alleged that, during that year, appellee withdrew from the account of Taft McGee and the Hereford Gin Company various sums, consisting of eleven items ranging from $22.35 to $375, amounting in the aggregate to $1562.62, which he unlawfully and wrongfully appropriated to his own use. The aggregate of the various items alleged to have been wrongfully acquired by appellee was $9,262.62, and appellant Taft McGee and the Hereford Gin Company prayed for judgment against appellee for that amount.

Upon the motion of appellee, the court entered an order of severance, in which it was ordered that appellee's cause of action against Roddy and Leverett and the cross-action of Roddy and Leverett over and against Taft McGee for indemnity against their liability upon appellee's cause of action was continued on the docket under the docket number of 17099, and the cause of action asserted by Taft McGee and the Hereford Gin Company against appellee was severed therefrom and entered upon the docket as cause number 17099-X. The reason for the severance recited in the order was that the cause of action asserted by Taft McGee and the Hereford Gin Company against appellee was not germane to the cause of action asserted by appellee against Roddy and Leverett and their plea over against Taft McGee; that the causes of action were separate; and that joining of the two causes of action complicated the issues and caused such confusion as to require their severance. The instant case is the cause that was left on the docket as No. 17099.

A jury was impaneled to try the case and the court submitted only one special issue as follows:

"Do you find from a preponderance of the evidence that Taft McGee did not deliver the warehouse receipts for the 15 bales of cotton in question to Claude McGee as a part of the consideration for Claude McGee's stock in the Hereford Gin Company?

"You will answer 'He did thus deliver the warehouse receipts' or 'He did not thus deliver the warehouse receipts.' "

The jury answered the special issue: "He did thus deliver the warehouse receipts."

In accordance with the verdict the court rendered judgment in favor of the appellee against appellants Roddy and Leverett for the sum of $2262.11 and in favor of Roddy and Leverett against Taft McGee and the

Hereford Gin Company for the same amount and provided that execution should issue therefor in favor of Roddy and Leverett when they paid, or caused to be paid, the judgment in favor of the appellee.

Appellants, Roddy, Leverett and Taft McGee, duly excepted to the judgment, gave notice of appeal, and have perfected an appeal to this court. Their brief contains a large number of assignments of error but we do not consider it necessary to discuss them in detail. Their first contention is that the court erred in severing the cause of action. As shown by our statement of the case, which, at the risk of being tedious but in order to maintain clarity, we will reiterate briefly, the action was instituted by appellee against appellants Roddy and Leverett. The ground upon which he sought to recover of them was that he had sold to them 15 bales of cotton for which they had issued and delivered to him their cheque or draft on a Lubbock bank in the sum of $2120.07. He alleged they agreed to pay him that sum of money for the cotton and that they repudiated their agreement and instructed the bank to decline payment of the cheque and that the bank observed their instructions and refused to pay it. He prayed for judgment against Roddy and Leverett for the amount which they agreed to pay him for the cotton, together with 6% interest from the date of the alleged sale.

Roddy and Leverett answered by admitting that they had purchased the 15 bales of cotton from appellee and agreed to pay him therefor the sum of $2120.07. They alleged further that they had been notified that appellee did not own the cotton and they thereupon paid the proceeds to Taft McGee who agreed to indemnify and save them harmless from any judgment that might be rendered against them in favor of appellee. They requested of the court, and obtained, permission to make Taft McGee a party defendant and set up their cause of action against him upon his agreement so to indemnify them.

Taft McGee answered by admitting he had agreed to indemnify Roddy and Leverett, but he alleged an extended course of dealings between him and appellee which involved the questions of whether or not appellee had appropriated to his own use funds belonging to Taft McGee and the Hereford Gin Company. He alleged that, by virtue of appellee's appropriating these funds, he was indebted to Taft McGee and the Hereford Gin Company in a large amount of money. It is readily seen that these allegations involved an accounting between appellee, Taft McGee, and the Hereford Gin Company, or at least a complete audit of the transactions between them over the entire period in which appellee was employed by them. The effect of the answers was to plead an offset and counter-claim against appellee. Neither of the appellants prayed for judgment against him for the $2120.07 involved in the suit originally filed by appellee against Roddy and Leverett.

■ ■ Under Rules 37, 41, 43, 97 and 174, Texas Rules of Civil Procedure, the trial court has large discretion upon the questions of severance, joinder and consolidation of causes of action. It readily appears from a consideration of all the issues made by the various pleadings that the issues between appellee and Roddy and Leverett are separate and distinct from those made by appellant Taft McGee and the gin company. They stand out boldly as two separate causes of action and, in our opinion, no error was committed by the court in severing them. Certainly it did not abuse its discretion in doing so. Appellants' first contention will, therefore, be overruled. Gowan v. Reimers, Tex.Civ. App., 220 S.W.2d 331; Wilson v. Ammann, & Jordan, Tex.Civ.App., 163 S.W.2d 660; Waller Peanut Co. v. Lee County Peanut Co., Tex.Civ.App., 217 S.W.2d 183; Simmons v. Wilson, Tex.Civ.App., 216 S.W. 847.

■ Appellants next complain because the court sustained objections of appellee to numerous efforts made by appellants to question various witnesses, particularly appellee and appellant, Taft McGee, concerning the items of $2000 and $3000 which they alleged appellee procured from West

Texas Cotton Oil Company on the account of Hereford Gin Company and the various items aggregating $1662.62, including the G. H. Whitaker bale of cotton alleged to have been appropriated by appellee. Included in this complaint is also the action of the court in refusing to allow appellants to cross-examine appellee and bring out testimony which would show that appellee was indebted to Taft McGee and the Hereford Gin Company in an amount much larger than the amount for which appellee sued Roddy and Leverett and that appellee was, therefore, not entitled to recover the amount for which he had sued. Further, in this connection, appellants assign error in the refusal of the court to permit Taft McGee to testify concerning profits of the gin company and that it earned no profits during the year 1948. Other matters of a similar nature are included in the assignments of error presenting this general question and all of them have reference exclusively to the issues involved in the severed cause of action, No. 17099–X. None of them had any reference to the issues being tried by the court in this case, namely, whether or not appellants Roddy and Leverett were indebted to appellee and, if so, whether or not appellant Taft McGee had agreed to indemnify Roddy and Leverett against any judgment that might be rendered against them in favor of the appellee. We conclude, therefore, that no error was committed by the court in its ruling on any of the questions involved in this general contention.

■■ The next contention of appellants involves various statements made to the jury by appellee's counsel in his argument. None of the statements or arguments complained of is brought forward in a bill of exception. The only portion of the record referred to in appellants' brief in support of their assignments of error in regard to the arguments is their motion for a new trial. It has been held by the courts of this state from an early day that remarks of counsel which are alleged to have been erroneous and wrongfully influenced the jury, must be incorporated in bills of exception or other proper certificate. An allegation in a motion for a new trial, even though it is supported by affidavits of the jurors and others, is not sufficient to supply the fact as a part of the record on appeal and cannot be considered by the appellate court. Maffi v. Stevens, 49 Tex. Civ.App. 354, 108 S.W. 1008; Chandler v. Wiemers, Tex.Civ.App., 4 S.W.2d 569; Ely v. Lasch, Tex.Civ.App., 11 S.W.2d 593, and the many authorities therein cited.

■ The next complaint presented by appellants pertains to alleged misconduct of the jury. Upon the hearing of the allegations in appellants' motion for a new trial, alleging misconduct of the jury, several of the jurors were presented as witnesses and it was shown by their testimony that, when the jury first received the charge of the court late in the afternoon of the second day of the trial, they retired to the jury room and considered the case for a short time and then recessed for supper. They reassembled in about an hour and, when they resumed consideration of the case, they became confused as to the interpretation that should be given to the word "stock" included in the special issue submitted to them. They then requested the court to give them its interpretation of the word "stock" and the court defined it to them as meaning "all of Claude McGee's interest of every nature in the corporation and the assets of every nature thereof." The testimony indicates that some of the jurors were of the opinion that the word "stock" meant only the property owned by the corporation, such as cotton and other personal property. The jury dispersed after two or three hours and each of them retired to his home. The next morning one of the jurors brought into the jury room a financial statement of a local bank. Another informed some of the jurors that he had consulted a dictionary and a lawbook in an effort to ascertain the true meaning of the word "stock." The testimony of the jurors shows that little or no consideration was given by any of them to the financial statement and neither the contents of the financial statement nor the definition found in the dictionary and lawbook is revealed by the testimony. All of the jurors who testified stated positively that neither the financial statement nor remarks of the

juror concerning the dictionary or lawbook made any impression upon them and that they considered only the definition of the word "stock" submitted to them by the court in response to their written request. The question of whether or not misconduct occurred in the jury room is a question of fact; but the question of whether or not misconduct resulted in injury to the complaining party or affected the verdict of the jury is a question of law to be determined by the court. The court heard the testimony, observed the demeanor of the witnesses while testifying and concluded no injury to appellants had been shown. Conceding that the action of the two jurors, one in bringing to the jury room the bank's financial statement and the other revealing to some of the jurors the fact that he had consulted a dictionary and a lawbook, constituted misconduct, it does not necessarily follow that injury resulted nor that the verdict was in any manner influenced by it. It is well-settled that the mere fact that misconduct occurred in the jury room does not call for a new trial to be granted by the trial court nor for a reversal of the case by the appellate court. Rule 327, Texas Rules of Civil Procedure, expressly provides that a new trial may be granted if the misconduct was material and it reasonably appears from the evidence that injury probably resulted to the complaining party. To warrant the granting of a new trial by the trial court or to constitute reversible error in the appellate court, therefore, it must appear reasonably probable that the verdict was affected by the misconduct of the jury. Menefee v. Gulf, C. & S. F. Ry. Co., Tex.Civ.App., 181 S.W.2d 287; White Cabs v. Moore, 146 Tex. 101, 203 S.W.2d 200.

The next and last contention presented by appellants is that the court erred in placing the burden of proof upon them instead of appellee in the special issue submitted to the jury. The jury was requested to find if Taft McGee did not deliver the warehouse receipts for the 15 bales of cotton to Claude McGee as part of the consideration for Claude McGee's stock in the Hereford Gin Company. Appellants contend that the issue should not have been couched in the negative but should have asked the jury to find if Taft McGee did deliver the warehouse receipts as part of the consideration for Claude McGee's capital stock. The jury was instructed to answer the special issue, not by a simple "yes" or "no," but to state in their answer the fact, that is, whether the stock was, or was not, so delivered. We think it is doubtful if the special issue, when considered in connection with the instruction as to the answer, placed the burden of proof upon appellants but, conceding that it was so placed, in our opinion no error was committed by the court in the manner of its submission for the reason that all of the appellants alleged that the 15 bales of cotton never at any time belonged to appellee. Appellee had possession of the warehouse receipts when he sold the cotton to Roddy and Leverett and, when the sale was closed, he delivered them to Roddy and Leverett. The receipts represented the cotton itself and it was the contention of all the appellants throughout the trial that appellee did not own the cotton.

We have carefully examined all of the contentions presented by appellants and, in our opinion, none of them reveals error. The judgment of the court below will, therefore, be affirmed.