STATE OF MONTANA, Plaintiff and Respondent, *v.* DR. M. A. RUONA, Defendant and Appellant.

No. 9838.

Submitted December 17, 1957. Decided January 23, 1958.
Rehearing Denied February 28, 1958.

321 Pac. (2d) 615.

Arthur R. Meyer, Billings, for appellant.

Forrest H. Anderson, Atty. Gen., James A. Robischon, Asst. Atty. Gen., Joseph E. Buley, County Atty., Billings, for respondent James A. Robischon, Asst. Atty. Gen., and John L. Adams, Jr., Deputy County Atty., Billings, argued orally.

MR. CHIEF JUSTICE HARRISON:

Defendant has appealed from a judgment of conviction of driving an automobile while under the influence of intoxicating liquor.

The following facts were adduced at the trial: John Bevan, a policeman and witness for the state, testified that about 3:00 a.m., the morning of October 16, 1956, he found the defendant

in his car which was parked, with motor running, in or partially in the traffic lane of a public street in Billings, Montana. Upon finding the car, Bevan called deputy sheriff Delbert Jones to come to the scene. His reason for calling Jones was that he was not sure whether the car was parked in or out of the city limits of Billings. He also testified that after Jones arrived on the scene, Jones and defendant talked for some time, Jones apparently attempting to get defendant out of his car. Officer Bevan testified that Jones then attempted to force defendant out of his car and at this time the car lurched backwards about three or four feet; that defendant then closed his door, locked himself in his car and refused to move. Bevans also stated that in his opinion the defendant was under the influence of intoxicating liquor when he and Jones arrived at the scene.

Deputy Sheriff Jones testified that he found defendant slumped over the wheel of a car when he first arrived, that he shook him three or four times, but that defendant "just mumbled." That later, after unsuccessfully attempting to cajole the defendant into getting out of the car, he placed him under arrest. At about that time he said the defendant attempted to drive the car away, and in fact the car lurched backwards three or four feet. However, Jones said he grabbed the defendant's arm to prevent him from going further and in doing so thought the ignition key was bent in his hands. Deputy Jones stated that upon observations made of the defendant it was his opinion that he was under the influence of intoxicating liquor.

Another witness for the state, Don Davidson, who arrived at the scene after Jones had taken the keys away from the defendant, testified that from his observations he thought the defendant was "pretty well lit up."

Defendant testified that the reason his car was in the street was because he had bent the ignition key and could not start it. However, this is directly contradicted by the testimony of Bevan and Jones that when they arrived the motor was run-

ning, and further by their testimony that the car lurched backwards as the defendant apparently tried to drive away.

Defendant further testified that because of the hour of the morning he was waiting for someone to come so that he could get some assistance to move his car, because it was partially out of its parking place. He stated that he probably dozed and when he first was awakened he was being manhandled, and the party touching him was using offensive language; that immediately the party asked for the keys to his car and appeared to be handling him in an offensive and belligerent manner at which time the defendant rolled up his windows and refused to leave.

With regard to drinking, defendant testified that he had two highballs over a period of several hours and one drink at a later period close to 2:00 a.m. Defendant was qualified as an expert witness and testified that the effect of the liquor which he had consumed normally would not place a person under the influence of intoxicating liquor.

Upon the close of all testimony, instructions were settled, given to the jury, and a verdict of guilty subsequently rendered by it. From the judgment of conviction defendant now appeals upon seven specifications of error. Since several of such specifications present no legitimate issues, an extended discussion of all seven will be unnecessary to a decision in this case. As we view the record, the proceedings, and the law, there are but two issues that require our attention: (1) Is the term ''actual physical control'' used in the statute under which defendant is charged, so vague, ambiguous and uncertain as to render the statute void? (2) Did certain remarks, allegedly made by the county attorney in his closing argument in the absence of the court reporter, constitute either, (a) misconduct on his part, or (b) a violation of defendant's constitutional privilege against self incrimination?

The relevant portion of the statute under which defendant was charged in this case is found in section 32-2142(1) subd. (a), R.C.M. 1947, which reads: ''It is unlawful and punish-

able as provided in paragraph (c) of this section for any person who is under the influence of intoxicating liquor to drive or be in actual physical control of any vehicle within this state.''

Before discussing the first issue, the following instructions given by the district court should be considered:

Instruction No. 10. ''You are instructed that the physical control necessary by the defendant under the provisions of the statute here involved, means such control as would enable the defendant to actually operate his vehicle in the usual and ordinary manner.''

Instruction No. 12. ''You are instructed that if you believe beyond a reasonable doubt that at the time charged in this complaint, the defendant, Dr. M. A. Ruona, was seated in his car, with motor running, with the intent then and there in him, the said defendant, to drive such vehicle on a public highway or street within the State of Montana, then the defendant had actual physical control of his vehicle as provided by the statute. That it need not be shown that the vehicle had actually moved or was traveling on such highway or street within said state.''

Instruction No. 10 was offered by the defendant, Instruction No. 12 by the state. It should be noted that the latter instruction merely applies the term defined in No. 10 to the facts in the instant case. This procedure was specifically approved in State v. Park, 88 Mont. 21, 32, 289 Pac. 1037.

Defendant's contention is that the term ''actual physical control'' is so vague and uncertain of meaning, as to be impossible to define, and therefore illegal. In support he cites In re Maury, 97 Mont. 316, 326, 34 Pac. (2d) 380. Defendant makes no argument as to whether or not, (assuming the statute is susceptible of definition) the facts in this case come within any definition of ''actual physical control,'' but rather relies only upon the statute's alleged voidness.

Admitting that a statute could be declared void for uncertainty or vagueness, does section 32-2142(1) subd. (a) come within the purview of that rule?

In defining the phrase, this court will first look to a well-recognized authority on definitions to aid in its construction of the statute. "Actual" is defined in Webster's New International Dictionary (2d ed.) as meaning, "Existing in act or reality; * * * In action or existence at the time being; present; * * *" "Physical" in the same work, is defined as "bodily," and "control," is defined as "To exercise restraining or directing influence over; to dominate; regulate; hence, to hold from action; to curb; subject; * * *" Using the term in "actual physical control" in its composite sense, it means "existing" or "present bodily restraint, directing influence, domination or regulation." Thus, if a person has existing or present bodily restraint, directing influence, domination or regulation, of an automobile, while under the influence of intoxicating liquor he commits a misdemeanor within the provisions of section 32-2142(1) subd. (a). In arriving at the above definition it should be noted that we interpreted the individual words "actual," "physical," and "control" in their ordinary meaning. This is directly in accord with the general rule that words of a statute are to be interpreted in their ordinary interpretation is indicated in the statute. State ex rel. Keane v. Board of County Com'rs, 83 Mont. 540, 273 Pac. 290; McNair v. School District No. 1, 87 Mont. 423, 288 Pac. 188, 69 A.L.R. 866; Great Northern Utilities Co. v. Public Service Comm., 88 Mont. 180, 293 Pac. 294.

The above definition makes it apparent that movement of the vehicle is unnecessary to charge an offense under this provision of the statute. Thus one could have "actual physical control" while merely parking or standing still so long as one was keeping the car in restraint or in position to regulate its movements. Preventing a car from moving is as much control and dominion as actually putting the car in motion on the highway. Could one exercise any more regulation over a thing, while bodily present, than prevention of movement or curbing movement. As long as one were physically or bodily able to assert dominion, in the sense of movement, then he has as much

control over an object as he would if he were actually driving the vehicle.

Nor does the above proposition and definition find lack of authority in the law. Ohio has a provision in its statute which utilizes the term "actual physical control" in almost the identical manner as involved here. See Ohio Gen. Code, section 6307-19. The Ohio court in State v. Wilgus, Ohio Com. Pl., 17 Ohio Supp. 34, defined their statute in almost the identical terms this court has used. In that case the evidence was that defendant sat alone in his automobile on the highway for a period of two hours, intoxicated and asleep, with the motor running, his feet on the pedals and his body slouched over the steering wheel. The court said that the statute defined two distinct offenses, "operating a vehicle," and "being in actual physical control of a vehicle" while intoxicated. It was held that the control contemplated meant more than the "ability to stop an automobile," but meant *"the ability to keep from starting," "to hold in subjection," "to exercise directing influence over," "the authority to manage."* Emphasis supplied.

The leading case of State v. Webb, 78 Ariz. 8, 274 Pac. (2d) 338, 339, while not faced with the problem of defining the term "actual physical control" which appears in a statute similar to ours (see Arizona Code Anno. Supp. 1952, section 66-156, A.R.S. section 28-692) was faced with a problem collatteral or incidental thereto, that is whether the term referred to only positive action. In the Webb case the defendant was found in his truck, parked in a lane of traffic with lights on and motor running. The officer found the defendant to be in a very intoxicated condition, "passed out" or asleep with both hands and his head resting on the steering wheel. The defendant on appeal conceded he was under the influence of intoxicating liquor, but argued the statute did not encompass such conduct as was there involved. He asserted that "the statute in question is concerned with the driving of an automobile and other acts and conduct of a positive nature, and does not apply to the instant case where the vehicle was not

moving and defendant was asleep or unconscious." In answer to this argument the court said: "*An intoxicated person seated behind the steering wheel of a motor vehicle is a threat to the safety and welfare of the public.* The danger is less than that involved when the vehicle is actually moving, but it does exist. *While at the precise moment defendant was apprehended he may have been exercising no conscious volition with regard to the vehicle, still there is a legitimate inference to be drawn that defendant had of his own choice placed himself behind the wheel thereof, and had either started the motor or permitted it to run. He therefore had the 'actual physical control' of that vehicle, even though the manner in which such control was exercised resulted in the vehicle's remaining motionless at the time of his apprehension."* Emphasis supplied.

In the light of all that has been said it is quite evident that ▮ the statute in the instant case is neither vague nor uncertain. The defendant inferentially questioned the correctness of the court's instruction on "actual physical control." While it is apparent that the district court limited the definition of the term, such limitation instead of prejudicing defendant's cause, helped it.

We come now to the second issue in the case. Defendant ▮ alleged in his brief that at the conclusion of the trial the county attorney, in the absence of the court reporter, made certain statements about the failure of the defendant to consent to certain scientific tests. Defendant objected to such remarks on the basis they were unsupported by the evidence and in violation of defendant's constitutional privilege against self incrimination.

Nowhere in the bill of exceptions does there appear to be any preparation, settlement or allowance as to what the county attorney actually said. Also it is obvious that neither the state's counsel nor the judge agreed with defendant's interpretation of what had been said. A brief reflection on the court's remark "It is the opinion of the Court that the effect of the statement of counsel is contrary to the interpretation placed

on that statement by counsel'' verifies this observation. Clearly upon this record no error was committed by the district court.

Defendant's counsel had prepared an affidavit in which he swears ''That in the closing argument of the State, while the court reportèr was not present, the counsel for the state remarked upon the failure of the defendant to consent to take certain scientific tests, and that I objected and at that moment asked for a mistrial, but that since no court reporter was present, the court told the deputy county attorney to proceed, and a record was not made until a later time after the court reporter was brought back from the courthouse.'' This affidavit was prepared October 25, 1957, after the bill of exceptions had been settled on June 11, 1957. No request for mistrial appears in the transcript herein and in answer to the inquiry of the court, defendant's counsel stated that all he could do was make an objection.

It has been repeatedly held that one relying upon error in the trial court must preserve his objections and certify them with the facts upon which they are based to this court in a bill of exceptions prepared, settled and allowed in the manner provided for by statute. Miners Nat. Bank of Butte v. Proulx, 119 Mont. 456, 176 Pac. (2d) 267; Putnam v. Doney, 78 Mont. 190, 253 Pac. 270.

In the absence of such a bill of exceptions this court will not review the error alluded to, but will presume the trial court was correct in ruling in the manner it did. Miners Nat. Bank of Butte v. Proulx, supra; Stabler v. Porter, 72 Mont, 62, 232 Pac. 187; State v. Stevens, 60 Mont. 390, 199 Pac. 256.

In the instant case the bill of exceptions lacks that portion of the facts upon which defendant's objection is based. No bill of exceptions was prepared, settled or allowed on that point. The defendant at the trial, upon cross-examination by the county attorney, admitted he did not take any scientific tests, thus the state's remark could have been directed to his failure to take such tests rather than to any lack of consent. In view

of the court's remark quoted previously, he evidently felt the same way. Upon the record here the court was correct and in the absence of a bill of exceptions on this point to the contrary it is presumed whatever the county attorney said was not prejudicial. As was said in Larson v. Great Falls City Lines, Inc., 119 Mont. 593, 178 Pac. (2d) 410, 414, wherein appellant specified error upon misconduct of opposing counsel in his argument: ''It was appellant's duty to have the bill of exceptions correctly prepared and settled, as required by sections 9390 or 9392 Revised Codes [1921 now R.C.M. 1947, sections 93-5505 and 93-5507]. Because of his failure to do so, the objections and exceptions in question are not before us.''

The affidavit relied on by defendant is of no effect whatsoever since not made a part of the bill of exceptions. In Wright v. Galle, 125 Ind. App. 401, 124 N.E. (2d) 212, the court held that a specification of error resting on misconduct of an opposing attorney must be presented to the appellate court by a bill of exceptions properly settled and allowed, in the absence of which, the issue would not be reviewed. This is true whether the execution is supported by affidavits of jurors or other persons present at the trial, Mc.Gee v. McGee, Tex. Civ. App., 237 S.W. (2d) 778, 783, or when sworn to be the stenographer herself. Miners Nat. Bank of Butte v. Proulx, supra; Lindly v. Atchison, T. & S.F. Railroad Co., 47 Kan. 432, 28 Pac. 201. See also Williams v. Mt. Vernon Car Mfg. Co., 211 Ill. App. 68, 70 (not reported in full), where, in the abstract of the case it is said: ''Error charged on the ground of improper argument of counsel will not be considered where the objectionable remarks are not preserved in the bill of exceptions but are merely included in the affidavit on the motion for a new trial.''

The fact that the county attorney's remarks were not preserved verbatim by the court reporter does not militate against the above holdings since defendant could have availed himself of a common-law bill of exceptions. See State v. Hogan, 100 Mont. 434, 49 Pac. (2d) 446, and State ex rel. Stimatz v. Dis-

trict Court, 105 Mont. 510, 514, 74 Pac. (2d) 8. In the Hogan case, where defendant utilized this method of preserving his exceptions, it is noted that the closing remarks of state's counsel excepted to were settled in the bill of exceptions, though no stenographer was present when they were made.

In Miners Nat. Bank of Butte v. Proulx, supra, this court said that even an agreed statement of the facts could not serve the function of a bill of exceptions without proper signing, settling or allowance by the trial court.

The following language in the case of State v. Stevens, 60 Mont. 390, 407, 199 Pac. 256, 261, governs the issue under discussion: "Objection was made by defendant to alleged remarks of the county attorney in his closing argument. In this connection it may be well to remark that the address of the county attorney is not shown in the transcript, nor any of the portions of it to which objection was made settled in any way by the court. The record merely shows the objections of defendant without any record to which the objections can apply. If appellant desires to have such questions reviewed in this court, the record should show what actually took place, so that there may be no uncertainty as to what the facts in question were. Furthermore, inasmuch as the text of the county attorney's address is not before us, we are unable to determine the connection in which the remarks in question were used." This same language was quoted with approval in State v. Stevens, 119 Mont. 169, 179, 172 Pac. (2d) 299.

We find no error committed by the district court herein and the jugdment is affirmed.

MR. JUSTICES CASTLES and ANGSTMAN, the HONORABLE WILLIAM R. TAYLOR, District Judge, concur.

THE HONORABLE WILLIAM R. TAYLOR, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, because of the latter's illness.

MR. JUSTICE ADAIR: (concurring in the result)

I concur in the result, but not in all that is said in the foregoing opinion.