
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| CITY OF SPOKANE, | ) | |
| | ) | No. 40075-1-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EMMA ROSE RAMOS, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

STAAB, A.C.J. — Emma Rose Ramos was charged with being in actual physical control of a motor vehicle while under the influence after she was found asleep in the front passenger seat of her Jeep while it was parked on the side of the street with the engine running. Ramos moved to dismiss the charge, arguing that the physical control statute was unconstitutionally vague as applied to her. Specifically, Ramos argued that if the definition of "actual physical control" was so broad as to include a person sitting in the passenger seat of a parked vehicle then the criminal offense failed to give notice of the proscribed behavior and failed to provide ascertainable standards of guilt to protect against arbitrary enforcement. The city of Spokane (City) defended the constitutionality of the statute, but argued that the term "actual physical control" is broad enough to encompass a person in the passenger seat of a motionless vehicle. Noting cases where

passengers were found to be in actual physical control, the Spokane Municipal Court

concluded that the statute lacked a clear and consistent definition and was void for

vagueness as applied to Ramos.

The City sought direct review by the Supreme Court, which denied review and

transferred the case to this court pursuant to RAP 4.3(e). As a preliminary matter, we

hold that upon transfer by the Supreme Court of a notice for direct review, the Court of

Appeals should apply the factors set forth in RAP 4.3(a)(1) and (2) to determine whether

direct review should be granted. If the Court of Appeals does not grant direct review, a

final decision appealable as a matter of right should be transferred to the superior court to

be processed according to the Rules on Appeal from a Court of Limited Jurisdiction. In

this case, we grant the City's request for direct review.

Turning to the constitutional issue, we reverse the municipal court's dismissal of

the physical control charges based on the court's conclusion that the statutory crime of

being in physical control of a vehicle is unconstitutional. The physical control statute is

not unconstitutionally vague as applied to Ramos. The term "actual physical control" has

been defined with sufficient clarity as "'existing' or 'present bodily restraint, directing

influence, domination or regulation.'" *State v. Smelter*, 36 Wn. App. 439, 442, 674 P.2d

690 (1984) (internal quotation marks omitted) (quoting *State v. Ruona*, 133 Mont. 243,

248, 321 P.2d 615 (1958)). In plain terms, and as applied to the statute, it means the

2

existing or present ability, through the use of bodily force, to restrain, direct, influence, or regulate the movement of a vehicle.

Since Ramos withdrew her *Knapstad*[1] motion below and proceeds on the constitutional challenge only, we do not decide whether the application of this definition to the facts in this case requires dismissal. Instead, we remand for further proceedings.

BACKGROUND

For purposes of this appeal, the following facts are unchallenged.

While investigating the theft of a cellphone in Spokane, Officer Jaelene Leeson viewed surveillance footage of what appeared to be a woman drinking out of alcohol bottles while sitting in the driver seat of a Jeep Liberty at approximately 4:54 a.m. Upon running the license plate number, the Jeep returned as registered to Emma Rose Ramos. Officer Leeson determined the photo on Ramos's Washington identification card matched the surveillance footage of the woman in the driver's seat.

Officer Leeson traveled to the address of the registered owner and arrived at approximately 7:28 a.m. Upon arrival, Officer Leeson observed a gold Jeep Liberty parked in front of Ramos's residence. Officer Leeson observed Ramos either sleeping or unconscious, reclined in the front passenger seat of her vehicle. The Jeep was parked on the side of the road facing the wrong way. Its engine was running with both the

---

[1] *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

headlights and taillights illuminated.  Officer Leeson observed vomit on the Jeep's

exterior from the front passenger side window down the side of the vehicle.

An officer turned off the Jeep's engine and Officer Leeson eventually roused

Ramos.  Despite signs of being intoxicated, Ramos denied drinking.  Officer Leeson

began telling Ramos about what she observed on the store's security video.  When

Officer Leeson mentioned that she saw a couple of people in the back seat with Ramos

driving, Ramos affirmatively responded, "Mhmm."

Officer Leeson then explained to Ramos that she could clearly see her drinking out

of two alcohol bottles and then leaving the Garland Market.  Ramos responded, "Two

alcohol bottles?  I was driving out of two alcohol bottles?"  Clerk's Papers (CP) at 188.

Officer Leeson stated that she was concerned with how Ramos got to her home while she

was intoxicated, to which Ramos responded, "I was not intoxicated."  CP at 188.  She

stated she had not had anything to drink in over 24 hours.

Ramos declined to submit a voluntary preliminary breath test or voluntary sobriety

test, stating, "I've been in the car" and asking why she needed to submit to such tests.  CP

at 190.  Additionally she said, "I haven't been drinking and driving at all" and "I told

you, I've been sleeping in my car."  CP at 191.  Officer Leeson then told Ramos she was

under arrest.

4

Initially, Ramos was cited for driving under the influence of alcohol. However, the City later amended the criminal complaint charging Ramos instead with being in actual physical control of a motor vehicle while under the influence of alcohol.[2]

Ramos filed a motion to suppress pursuant to CrRLJ 3.6 and a motion to dismiss pursuant to CrRLJ 8.3(b). At a hearing on the motion, counsel clarified that they were striking the *Knapstad* argument and waiving it for purposes of the motion. Instead, counsel clarified that Ramos was moving forward only on the vagueness issue. The court took the matter under advisement and later entered a memorandum decision concluding that the statute was unconstitutionally vague as applied to Ramos and granted Ramos's motion to dismiss. The City sought direct review.

ANALYSIS

1.  DIRECT REVIEW

After the municipal court granted Ramos's motion to dismiss, the court granted the City's motion to enter findings that its order was a final and appealable decision under RALJ 2.2(c)(1), and to further conclude that the order was eligible for direct review by the Supreme Court under RAP 4.3(a)(2). The court agreed, and set forth a written statement for the Supreme Court. The City then sought direct review by the Supreme Court.

---

[2] Spokane Municipal Code 10.58.010 incorporates the Revised Code of Washington. Thus, for purposes of this appeal, we address the statute.

Ultimately, the Supreme Court decided not to retain the case and entered an order transferring the case to this court. We take this opportunity to provide guidance on the procedures to be utilized when the Supreme Court transfers a notice of direct review to the Court of Appeals under RAP 4.3(e).

Generally, an appeal of a final decision from a court of limited jurisdiction is filed in superior court. RALJ 2.3(a). A party seeking further review of a superior court decision on appeal from a court of limited jurisdiction may file a notice with the Court of Appeals. RAP 2.3. Alternatively, a party aggrieved by a decision from a court of limited jurisdiction may seek direct review with the Supreme Court. RAP 4.3. The Supreme Court clerk or commissioner may accept review, or transfer the case to the Court of Appeals or the superior court. RAP 4.3(e). While RAP 4.3(e) allows a transfer to our court, the rule does not provide guidance on procedures to be followed once that transfer occurs.

We hold that upon transfer to the Court of Appeals from the Supreme Court of a final decision of a court of limited jurisdiction, the Court of Appeals shall consider whether to grant direct review or transfer the case to the superior court. The factors that the commissioner will consider in determining whether to grant direct review are set forth in RAP 4.3(a)(1) and (2). If the Court of Appeals declines direct review, and transfers a final decision to the superior court, then review in superior court as a matter of right shall

be governed by the procedures set forth in the Rules of Appeal from Courts of Limited Jurisdiction.

This procedure was not followed in this case. Instead, upon receipt of this case from the Supreme Court, this court set a briefing schedule and hearing date. Nevertheless, we exercise our discretion to accept direct review, finding that the factors set forth in RAP 4.3(a)(1) and (2) are met. The dismissal order appealed is a final decision under RALJ 2.2. The municipal court judge declared the criminal statute unconstitutional as applied, and this declaration could have significant ramifications that necessitates a prompt determination. In addition, the facts are undisputed for purposes of this appeal and the record is fully developed.

## 2. CONSTITUTIONAL CHALLENGE TO PHYSICAL CONTROL STATUTE

We turn now to the substantive issue before the court: whether the physical control statute, RCW 46.61.504, is void for vagueness as applied to Ramos.

"The constitutionality of a statute is reviewed de novo." *State v. Watkins*, 191 Wn.2d 530, 535, 423 P.3d 830 (2018). As a starting point, this court presumes a statute is constitutional. *In re Det. of Danforth*, 173 Wn.2d 59, 70, 264 P.3d 783 (2011) (plurality opinion). In a vagueness challenge, the challenger bears the burden of proving the statute's unconstitutionality. *State v. Yishmael*, 195 Wn.2d 155, 175, 456 P.3d 1172 (2020).

Ramos argues that the term "actual physical control" as used in RCW 46.61.504 is void for vagueness as applied to her. Washington courts have long recognized "the basic principle that a criminal statute must give fair warning of the conduct that makes it a crime." *State v. Thompson*, 28 Wn. App. 2d 1, 6, 536 P.3d 682 (2023). Stated otherwise, a defendant may challenge a statute as being unconstitutionally vague. *Id.*

"A statute can be challenged as being facially vague or vague as applied."[3] *State v. Peters*, 17 Wn. App. 2d 522, 538, 486 P.3d 925 (2021). "'If the statute does not involve First Amendment rights [under the United States Constitution], then the vagueness challenge is to be evaluated by examining the statute as applied under the particular facts of the case.'" *State v. Watson*, 160 Wn.2d 1, 6, 154 P.3d 909 (2007). To do so, "we look at the actual conduct of the party challenging the statute, not to any hypothetical situation." *Peters*, 17 Wn. App. 2d at 538. "'This is [important] because while a statute may be vague . . . as to some conduct, [it] may be constitutionally applied to one whose conduct clearly falls within the constitutional core of the statute.'" *Thompson*, 28 Wn. App. 2d at 7 (internal quotation marks omitted) (quoting *State v. Maciolek*, 101 Wn.2d 259, 263, 676 P.2d 996 (1984)).

---

[3] Ramos does not bring a facial challenge.

When "challenging a statute on vagueness grounds," "[t]he challenger must show, beyond a reasonable doubt, that either (1) the statute does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) the statute does not provide ascertainable standards of guilt to protect against arbitrary enforcement." *State v. Coria*, 120 Wn.2d 156, 163, 839 P.2d 890 (1992).

Under the definiteness requirement, a "statute is 'void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.'" *City of Seattle v. Eze*, 111 Wn.2d 22, 26, 759 P.2d 366 (1988) (quoting *O'Day v. King County*, 109 Wn.2d 796, 810, 749 P.2d 142 (1988)). But a "statute is not unconstitutionally vague [just] because it fails to define some terms." *In re Pers. Restraint of Troupe*, 4 Wn. App. 2d 715, 723, 423 P.3d 878 (2018). Instead, "[w]hen a statute does not define terms alleged to be unconstitutionally vague, we 'may look to existing law, ordinary usage, and the general purpose of the statute to determine whether the statute meets constitutional requirements of clarity.'" *State v. Zigan*, 166 Wn. App. 597, 603, 270 P.3d 625 (2012) (internal quotation marks omitted) (quoting *State v. Hunt*, 75 Wn. App. 795, 801, 880 P.2d 96 (1994)).

Here, because Ramos brings an as-applied challenge, we consider her void for vagueness argument in light of the particular facts of her case. The relevant portion of the physical control statute provides "a person is guilty of being in actual physical control

9

of a motor vehicle while under the influence of intoxicating liquor or any drug if the

person has *actual physical control* of a vehicle within this state" while under the

influence, or above certain limits of alcohol, drugs or a combination of both. RCW

46.61.504(1) (emphasis added). The statute does not define the term "actual physical

control." Absent a statutory definition, this court should give terms their ordinary

dictionary meaning and look to case law where Washington courts have attempted to

define the term. *State v. Kintz*, 169 Wn.2d 537, 547, 238 P.3d 470 (2010) (dictionary);

*State v. Engel*, 166 Wn.2d 572, 578-79, 210 P.3d 1007 (2009) (common law).

The phrase "actual physical control" is not defined in the dictionary, but *Black's
Law Dictionary* 44 (12th ed. 2024) defines "actual physical control" as "[d]irect bodily

power over something, esp[ecially] a vehicle." This definition comports with the

individual definitions of the words in this phrase. The word "actual" is defined in the

dictionary as "existing in fact," as opposed to potential or possible, or "existing in fact or

reality" as opposed to ideal or hypothetical. WEBSTER'S THIRD NEW INTERNATIONAL

DICTIONARY 22 (1993). It is also defined as "in existence or taking place at the time,"

meaning present or current. *Id*. The relevant definition of the term "physical" is "of or

relating to physics **:** characterized or produced by the forces and operations of physics**:**

employed in the processes of physics." *Id*. at 1706. And finally, the relevant definition

of "control" is "to exercise restraining or directing influence over," or "to have power

over." *Id*. at 496. When these words are combined, the resulting phrase "actual physical

10

control" as pertains to the physical control statute means the existing or present ability, through the use of bodily force, to control the movement of a vehicle.

The "existing or present ability" focuses on the suspect's ability to exert physical force as opposed to the vehicle's ability to move. In *State v. Smelter*, the defendant was found seated in the driver's seat of a vehicle that was out of gas with its engine off, parked partly on the shoulder of an interstate freeway. 36 Wn. App. 439, 440, 674 P.2d 690 (1984). At the time he was stopped, the defendant's breath alcohol was over the legal limit. *Id*.

The *Smelter* court rejected the defendant's argument that he was not in actual physical control because his vehicle was inoperable. *Id*. Instead, the court adopted a widely used definition of the term "actual physical control" to mean "'existing' or 'present bodily restraint, directing influence, domination or regulation.'" *Id*. at 442 (internal quotation marks omitted) (quoting *Ruona*, 133 Mont. at 248). Movement of a vehicle is not included in this definition. *Id*. Instead, after surveying other decisions, the court found that "[p]ositioning in the driver's seat is an element common to all of the cases that have found actual physical control of a motionless vehicle." *Id*. at 443; *see also State v. Maxey*, 63 Wn. App. 488, 491-92, 820 P.2d 515 (1991) (stating that *Smelter* is the seminal authority for the definition of actual physical control).

One year later, our court held that the law did not violate equal protection by allowing those charged with physical control to assert the defense of safely-off-the-

11

roadway when the defense was not available to those charged with driving under the influence. *State v. Beck*, 42 Wn. App. 12, 14, 707 P.2d 1380 (1985). In reaching this conclusion, this court noted the distinction between the two offenses: "[p]hysical control means the defendant is in a position to physically regulate and determine movement or lack of movement of the vehicle," whereas "[t]o be guilty of driving while intoxicated, the driver must be in physical control and also 'must have had the vehicle in motion at the time in question.'" *Id*. at 15 (quoting *McGuire v. City of Seattle*, 31 Wn. App. 438, 442, 642 P.2d 765 (1982)).

While *Smelter* recognized that under the ordinary definition of "actual physical control" a person in the passenger seat is not able to control the movement of a motionless vehicle, subsequent cases have found that a passenger can be in actual physical control of a moving vehicle if they have the power to guide the vehicle by reaching over and grabbing the steering wheel. *See, e.g.*, *N. Pac. Ins. Co. v. Christensen*, 143 Wn.2d 43, 49, 17 P.3d 596 (2001). In *North Pacific Insurance Co.*, the Supreme Court applied the definition of actual physical control adopted in *Smelter*, noting that while the passenger's dominion of the vehicle was brief, grabbing the wheel of a moving vehicle was sufficient to direct the path of the vehicle and cause an accident. *Id*. at 52.

Here, the City acknowledges *Smelter*'s widely recognized definition of actual physical control, but contends that the Supreme Court decision in *State v. Votava*, 149 Wn.2d 178, 66 P.3d 1050 (2003), expanded that definition to include a person sitting in

12

the passenger seat of a motionless vehicle who may have driven the vehicle to that location at an earlier time or who may have moved into the driver seat and drove the vehicle while still intoxicated. We disagree that *Votava* changed the definition of "actual physical control."

In *Votava*, the court was asked to decide whether a defendant charged with actual physical control, who was found asleep in the driver's seat of a running vehicle, could assert the defense of "safely off the roadway." *Id*. at 182-83. This defense is available if "the person has moved the vehicle safely off the roadway." RCW 46.61.504(2). Votava produced evidence that while he was riding in the passenger seat, he directed the driver to pull into a parking lot. The driver left and Votava moved into the driver seat and fell asleep. The State argued that the defense of safely-off-the-roadway was not available to Votava because he did not move the vehicle safely off the roadway but only obtained physical control after the vehicle was moved.

Ultimately, the *Votava* court held that the defense of safely-off-the-roadway was available to Votava, noting that driving a moving vehicle was not an element of being in physical control of a vehicle and should not be required for the defense. *Votava*, 149 Wn.2d at 184. In reaching this conclusion, the court made several general comments about the crime of physical control. For example, the court cited *Beck* for the proposition that "[a]n officer may charge actual physical control of a vehicle when a person is in the position to control the movement or lack of movement of the vehicle." *Id*. The court

also cited *Smelter* for the proposition that "[w]hen the evidence gives rise to a reasonable inference that the vehicle was where it was by a person's choice, that person is in actual physical control of the vehicle." *Id.* And the court cited *Arambul* for the proposition that "[a] person may be in actual physical control even if someone else is driving." *Id.* (citing *In re Arambul*, 37 Wn. App. 805, 808, 683 P.2d 1123 (1984)).

These comments were made to support the court's conclusion on the meaning of the defense of physical control and specifically the phrase "'the person has moved the vehicle.'" *Id.* at 183 (quoting RCW 46.61.504(2)). The court was not addressing the definition of "actual physical control," and any language suggesting such would be dicta. *Votava* did not change or expand the meaning of "actual physical control." Indeed, the court noted that the "actual physical control statute was enacted to protect the public by (1) deterring anyone who is intoxicated from getting into a car except as a passenger, and (2) enabling law enforcement to arrest an intoxicated person before that person strikes." *Id.* at 184.

The term "actual physical control" is not vague as applied to Ramos or persons similarly situated. The phrase means "'existing' or 'present bodily restraint, directing influence, domination or regulation,'" or as we noted above, the existing or present ability, through the use of bodily force, to restrain, direct, influence, or regulate the movement of a vehicle. *Smelter*, 36 Wn. App. at 442 (internal quotation marks omitted) (quoting *Ruona*, 133 Mont. at 248). We do not find this definition ambiguous. The

14

phrase is sufficiently definite. And the definition does not leave police with arbitrary discretion to decide when the law has been violated.

The municipal court dismissed the charge of being in actual physical control after concluding that the phrase was unconstitutionally vague as applied. We conclude that the statute is constitutional. Ramos previously withdrew her *Knapstad* motion so we do not take the step of applying the definition of "actual physical control" to the facts of this case. Instead, we remand the case back to the municipal court. Ramos can decide whether to file another *Knapstad* motion using the definition we affirm here today.

Reversed.

_____
Staab, A.C.J.

WE CONCUR:

_____
Fearing, J.

_____
Cooney, J.