In the Matter of ABRAHAM M. FISCH, an Attorney, Respondent.

First Department, July 3, 1919.

Attorney at law — disciplinary proceeding — attempt to evade section 24 of Workmen's Compensation Law providing that claims for legal services shall not be enforcible unless approved by Commission — warning to legal profession.

Since one of the reasons for the passage of the Workmen's Compensation Law was to insure as large a return to the injured workman in compensation for injuries incurred in the course of his employment as possible, attorneys should not be permitted to evade the provision of section 24 of said law providing that " Claims for legal services in connection with any claim arising under this chapter   *   *   *   shall not be enforcible unless approved by the Commission."

The legal profession is warned that the use of any means to obtain a larger amount of the recovery for legal services than that fixed by the Commission is improper, unethical and deserving of disciplinary action.

Disciplinary proceedings against an attorney, charged with evading section
    24 of the Workmen's Compensation Law in procuring the brother of a
    client to guarantee payment of fifty per cent of any recovery obtained,
    dismissed, it appearing that said attorney was not guilty of any deceit
    or concealment and that said proceeding is the first of its kind to come
    before the court.

DISCIPLINARY proceedings instituted by the Association of
the Bar of the City of New York.

*Einar Chrystie,* for the petitioner.

*Moss, Marcus & Wels,* for the respondent.

CLARKE, P. J.:

The respondent was admitted to the bar at a term of the
Appellate Division, First Department, in November, 1912.
He is charged with having been guilty of misconduct as an
attorney at law as follows:

In 1915 the Workmen's Compensation Commission made
an award to one Philip Dreisner for personal injuries suffered
by him. Thereafter the Commission upon the joint request of
Dreisner and his employer's insurance company directed a
rehearing in the matter. Dreisner then retained the respond-
ent to act as his attorney before the Commissioners and
signed an agreement whereby he agreed to pay the respondent
fifty per cent of any amount recovered in his behalf. While
the case was pending before the Commission and after several
hearings in the matter had been held the respondent learned
that the Workmen's Compensation Law contained the follow-
ing provision: " Claims for legal services in connection with
any claim arising under this chapter, and claims for services
or treatment rendered or supplies furnished pursuant to
section thirteen of this chapter, shall not be enforceable unless.
approved by the Commission. If so approved, such claim or
claims shall become a lien upon the compensation awarded,
but shall be paid therefrom only in the manner fixed by the
Commission." (Consol. Laws, chap. 67 [Laws of 1914, chap.
41], § 24.)*

The respondent then informed Dreisner that he would not

---

" Since amd. by Laws of 1917, chap. 705.— [REP.

continue to act as his attorney unless he received some security or guaranty that he would receive fifty per cent of the recovery in accordance with the retainer above referred to. Finally Harry Dresiner, the brother of Philip Dreisner, having cash on deposit in the bank, was induced by the respondent to enter into an agreement of which the following is a copy:

" AGREEMENT made between Harry Dreisner and Abraham M. Fisch, party of the second part as follows:

" I, Harry Dreisner hereby retain Mr. Fisch as a lawyer for my brother, Philip Dreisner, to represent him in the Compensation Commission and for services to be rendered, I hereby agree to personally pay the said Abraham M. Fisch a sum equivalent to one-half of any award that may be made to my brother. Mr. Fisch is to receive no pay unless my brother Philip Dreisner receives an award from the Compensation Commission. I personally agree to pay the said 50% to Mr. Fisch and to that end I have deposited in the German Savings Bank, this 14th day of May, 1917, the sum of Five hundred dollars, as evidence of my intention to pay Mr. Fisch, and that this five hundred dollars now in the said bank in my name is held in trust in my name for Mr. Fisch, should Mr. Fisch succeed in securing an award. If the award secured amounts to such a sum that the fee due Mr. Fisch will be more than $500 then and in that event I agree to pay personally in addition to the moneys in the bank the difference between what Mr. Fisch is to receive under this retainer and the amount deposited by me. If the award should be of such a sum that Mr. Fisch's fee under this retainer is less than $500 then and in that event Mr. Fisch is not to receive the $500 on deposit and only such portion of the $500 on deposit as he is entitled to. The said money is held in the name of Mr. Dreisner in trust for Mr. Fisch and is not to be withdrawn from the bank by Mr. Harry Dreisner unless my brother has been unsuccessful in securing the award.

" Dated, NEW YORK, *May* 17, 1917."

The Commission subsequently awarded Philip Dreisner the sum of $864.90 and fixed his attorney's fee at the sum of $150, which sum thereafter was paid to the respondent. The respondent credited this amount on account of the moneys due

First Department, July, 1919.            [Vol. 188.

him pursuant to the terms of his agreement with Harry Dreisner and collected the balance due from Philip Dreisner under the terms of the contract without the approval of the Compensation Commission. It was understood between the Dreisners and the respondent that the fifty per cent of the recovery which the respondent was to receive would ultimately be paid by respondent's client, Philip Dreisner, out of the money awarded him by the Compensation Commission.

It is charged that after the respondent had entered upon the performance of his duties as attorney for Philip Dreisner before the Workmen's Compensation Commission and after his client's case had been partly tried, the respondent refused to continue to represent his client unless the agreement above set forth was executed and delivered to respondent by his client's brother and that said agreement was prepared by the respondent with full knowledge of section 24 of the Workmen's Compensation Law solely for the purpose of evading the provisions of said section.

In his answer the respondent states that after the fifty per cent retainer for appearing for Philip Dreisner before the Compensation Commission was signed, respondent first learned of the fact that there was a provision in the Workmen's Compensation Law to the effect that any agreement for the payment of a fee by an injured person must be approved by the Compensation Commission; that he then sent for Philip Dreisner and told him that the Compensation Commission would not allow fifty per cent; that they would not allow an attorney to bind his client as to a certain fee to be received by said attorney, and respondent told Mr. Dreisner of a personal experience that he had in one or two cases where in one case he got nothing and in another case the Compensation Commission awarded him $40. He explained to Dreisner that the claim was an old one and that in view of the fact that he had been turned down by the Commission and that other lawyers had refused to take it, that the chances of recovery were not bright and that it would not pay respondent to attempt to collect money for the injured person if in the end he would only receive a certain sum of money from the Commission if he was successful and nothing if he was unsuccessful. Respondent further explained that the amount of money paid by the Compensation

Commission to an attorney does not represent a sufficient sum for the services rendered, and that he would have to secure a business man who would personally retain respondent and pay him fifty per cent of any money recovered for the injury. He further says that after some attempt to secure a business man who would personally retain the respondent he was notified by both brothers that they could not secure such a business man, whereupon respondent told them that he could not undertake the case. A few days thereafter both brothers called at the home of respondent and Harry Dreisner asked respondent if it would be acceptable to respondent for him to personally undertake to pay respondent, as he had about $2,000 in the bank and was not married and was making good wages, as he explained, and that he was willing to show his good faith by depositing a sum of money in the bank and letting respondent have the bank book. Respondent replied that the arrangement would be satisfactory and that he would prepare a retainer and that he thereupon prepared the retainer set forth in the petition. He further states: After the claim of Philip Dreisner was tried before the Compensation Commission the question of attorney's fees came up for discussion and respondent stated to the Commission that he had been retained personally by Harry Dreisner, the brother of the injured man and that he did not intend to receive any moneys from Philip Dreisner. A long discussion followed at which time Harry Dreisner stated that the respondent refused to be the attorney in the case unless Harry Dreisner retained him and after the discussion was had the Commission awarded to the respondent the sum of $150 to be paid out of moneys awarded to Philip Dreisner. This the respondent refused to accept and told the Commission that he would be paid by Harry Dreisner and that he would not accept $150, whereupon the Commission ordered all of the moneys to be paid to Philip Dreisner. He further states that after the award had been made Harry Dreisner called upon him and said that in view of the fact that he was paying the money personally he ought to receive a commission of ten per cent, mentioning the sum of $80. This respondent refused to pay and subsequently respondent commenced an action in the

Municipal Court against Harry Dreisner and the German Savings Bank of Brooklyn wherein the $500 had been deposited on the written agreement of retainer, and after a trial judgment was entered in favor of the respondent for the sum of $432.45; that an appeal was taken by Harry Dreisner to the Appellate Term, but that he subsequently settled the case, agreeing to accept $325, and that this amount of money was paid by Harry Dreisner. He states that while he received a check from the insurance carrier for $150 he did not deposit it or ever use it, and when the trial in the Municipal Court took place had it for the purpose of offering it in evidence, and when the settlement between Harry Dreisner and respondent took place respondent returned the check to Harry Dreisner, and the check was subsequently returned to the insurance carrier, and he, therefore, states that the statement in the petition to the effect that the respondent received $150 and said sum was paid to him is not a fact and it is not a fact that respondent received $150 from Philip Dreisner or Harry Dreisner. The amount sued for represented fifty per cent of the award. The judgment recovered represented fifty per cent of the amount and the amount that respondent received from Harry Dreisner was in full settlement of respondent's claim for the fifty per cent of the award, and respondent returned the check he had in his possession, made payable to respondent's order by the insurance carrier, to Harry Dreisner, who returned it to the insurance carrier.

As the facts seem to be fully set forth in the petition and the answer there is no necessity for a reference. One of the avowed reasons for the passage of the Workmen's Compensation Law was to insure as large a return to the injured workman in compensation for injuries incurred in the course of his employment as possible. It was realized that under the conditions theretofore prevailing the great majority of cases were taken by lawyers on contingent fees and that from thirty-three to fifty per cent of the amounts recovered went to the attorneys instead of to the workmen. Simplicity of procedure, rapidity and certainty in procuring payment, and receipt by the injured of the bulk of the award instead of large payments therefrom for services in obtaining it was the end looked to and accomplished by this remedial legislation.

There does not appear in the matter at bar to have been any deceit or concealment practiced by the respondent. The contract of retainer was in writing. The matter was threshed out before the Compensation Commission and again in court where respondent recovered a judgment upon the retainer. Nevertheless we cannot approve a course of conduct which appears to us to be a palpable evasion of one of the great purposes of the act. If it be understood that the courts approve the action of an attorney in procuring a third party to agree to pay to him an amount equal to fifty per cent of the recovery it is quite obvious that that third party will in some way or other recover it from the workman and so the workman will in the end be no better off in this regard than if this remedial legislation had not been passed. Members of the bar should honestly, straightforwardly and sincerely aid in the carrying out of this beneficent legislation and if they are unwilling to do the work for the amount allowed by the Commission they should stand aside and let others do it.

We do not think under the circumstances disclosed by this record, especially since it is the first case of the kind that has come before this court, that we should discipline the respondent. We do think, however, it is our duty to warn the profession that we regard such conduct, or the use of any means which the wit of man may devise, by which a larger amount of the recovery shall go to an attorney than that fixed by the Commission as improper, unethical and deserving of disciplinary action. We think it clear that we ought to take this stand in support of this legislation and that hereafter we shall act upon such offenses accordingly.

With these words of warning the present proceeding is herewith dismissed.

DOWLING, SMITH, PAGE and PHILBIN, JJ., concurred.

Proceeding dismissed. Order to be settled on notice.