IN RE MAURY ET AL.

(No. 7,325.)
(Decided June 26, 1934.)
[34 Pac. (2d) 380.]

MR. JUSTICE ANDERSON delivered the opinion of the court.

Sheldon Breeden filed a complaint in this court against H. L. Maury and A. G. Shone, practicing attorneys at Butte, alleging misconduct on their part in reserving for their use and benefit excessive amounts from the proceeds of a partial payment of an award under the Workmen's Compensation Act made to the complainant.

The Attorney General suggested that special counsel be appointed to investigate the matter and, the members of the court concurring, John M. Kline, Esq., of Glasgow, an attorney and counselor of high standing, was appointed to investigate the complaint and report to this court with recommendations. After Mr. Kline interviewed the complainant, Messrs. Maury and Shone, and numerous others, he filed his report setting forth in detail the statements of the various persons interviewed. He also filed a brief in support of his conclusions. He recommends disciplinary measures.

Subsequently the Attorney General filed a written motion praying that this court consider whether or not the facts reported by the investigator are sufficient to warrant punishment under the law, and that, if it is determined that the facts, if true, would not warrant disciplining, the proceeding be dismissed; and if the court is unable ex parte to dismiss the proceeding, that it so find.

It appears from the report of Mr. Kline that there is but little dispute between the complainant and those accused as to

the essential facts involved. If the law as applied to the facts does not warrant disciplinary action on the part of this court, then the complaint should be dismissed without further proceeding.

Mr. Kline is to be commended for the eminent fairness he has displayed at all times and for the energetic and diligent manner in which he has pursued the investigation, both as to the facts and the law.

Sheldon Breeden, a middle-aged laborer, sustained a fracture of the skull by a falling tree while working in the woods near Sheridan, Montana. He was awarded compensation by the Industrial Accident Board for this injury. On April 19, 1930, Breeden had been paid $486 in monthly payments. Compensation was then discontinued on the report of Dr. W. M. Copenhaver, of Helena, on the ground that the only remaining disability was the loss of smell, not compensable. It appears that Breeden did not question this action until June 14, 1932, when Frank E. Blair, an attorney practicing at Virginia City, notified the board on behalf of Breeden that he appeared to be permanently disabled. On June 16, 1932, the board wrote Mr. Blair, explaining why payment had ceased, and advising him that more than two years having elapsed, it was now too late to reopen the case. It appears that at some time before Breeden consulted the accused, he endeavored to enlist the services of at least three other attorneys or firms to secure additional compensation for him. The attorneys so consulted were unwilling to undertake the employment. At the suggestion of a friend, Breeden solicited the services of Mr. Maury. Thereafter, on September 7, 1932, A. G. Shone filed with the board a "petition for allowance and rating of disability" of Breeden. Nothing was said about a rehearing, nor apparently was the question of the period of the two-year statute of limitation again raised by the board. It appears that during the month of October, 1932, Mr. Clements, the chairman of the Industrial Accident Board, being in Butte, was taken by Mr. Shone and Mr. Breeden to the office of Dr. H. F. Carman, in Butte, where there were shown certain

X-ray and other pictures of Mr. Breeden's skull, taken by Drs. Carman and Horst. The doctors were present and explained the pictures.

On November 4, 1932, Mr. Breeden and Mr. Shone were in Helena and, at the suggestion of Mr. Clements, these pictures were taken to and Mr. Breeden was examined by Drs. Cooney, Tracy and Shearer, of Helena, as physicians for the board. They found as a result of this examination that "a severe multiple fracture of the skull with resulting impaired functions of brain and central nervous system; incapacitated from doing any manual labor; condition may become progressively worse." Thereupon the board awarded additional compensation in a substantial amount for a period of 500 weeks. This compensation is still being paid.

On November 17, 1932, the board remitted a check for $1,965, being the arrears in the compensation awarded to Mr. Breeden, in a letter directed to or in the care of Mr. Shone. In the same letter was inclosed a copy of an order of the board fixing Mr. Shone's compensation at $200. This letter was received in Butte on the following day. Of the proceeds of the check Breeden received $800; $500 was received by Mr. Maury; $294.75 was paid by Mr. Shone to Drs. Carman and Horst, of which they paid to the hospital $66.30, where Mr. Breeden was necessarily confined while being prepared for, and following the taking of, the pictures. Mr. Shone retained $200 as the fee allowed by the board, $150 on account of four trips from Butte to Helena in connection with the matter, $10 paid to the hospital for services rendered to Mr. Breeden, and $10 on account of personal loans made by Mr. Shone to Mr. Breeden. These items disclose the disposition made of the proceeds of the check, with the exception of one dollar.

Mr. Maury and Mr. Shone occupy a suite of offices in a business block in Butte, each having a private office. They use a common reception room and employ a stenographer jointly. Each pays one-half of the rent and salary of the stenographer. They appear as counsel and as associate counsel in many cases before the courts. In their statements to the investigator both

said they were not in partnership and never had been at any time; that they never accepted employment in cases against each other but were free to do so; that they were not associated as counsel in the trial and conduct of all cases before the courts, but they frequently were associated, particularly in damage actions.

According to Mr. Maury, Breeden appeared at his office, and he (Maury) over a period of some weeks investigated the proposed case; he stated that he informed Breeden that he handled no cases or proceedings before the Industrial Accident Board because of his dislike of the chairman for certain reasons which he expressed in positive language. After his investigation he enlisted the services of Mr. Shone to conduct the proceedings before the Industrial Accident Board, and thereafter, it appears, Breeden did not see Mr. Maury until the receipt of the check from the board. Mr. Maury states that at the time he accepted the employment it was agreed that he was to receive a fee of $500 for his services in investigating the claim and for its prosecution before the district and supreme courts; that he advised Breeden at the time that in his judgment his claim would be disallowed by the board, and that an appeal to the courts would be necessary in view of the letter written by the board to Mr. Blair; he also advised him that in order to present the claim it would be necessary to have "encephalograms" taken, and that at the time Breeden was turned over to Shone he informed Shone, in substance, that he would guarantee the cost of taking the encephalograms to the extent of $200. It appears that the arrangement for taking of the encephalograms by Drs. Carman and Horst was made by Mr. Shone.

At the time the division of the proceeds of the check for the arrears in compensation was made, Messrs. Maury, Shone and Breeden were present. Breeden states that there was no previous arrangement as to attorney fees with either Mr. Maury or Mr. Shone; that the $500 for Mr. Maury was retained from the proceeds of the check, whereas Maury states that the $500 was paid to him in cash by Breeden. In any event, all concede

that Mr. Maury received $500 for his services without objection or protest on the part of Breeden at the time or for several months thereafter.

It is the view of the special investigator that under certain statutory provisions, which we shall presently notice, the fees to be paid counsel who appear before the Industrial Accident Board are to be fixed and determined by that body; that counsel who so appear are without right to receive further or additional compensation other than the fee allowed by the board; that while Mr. Maury did not personally appear before the board, under the facts and arrangement whereby Mr. Shone was to appear, Maury did in fact appear before the board through the agency of Mr. Shone; and that therefore he was within the purview of this statutory provision.

It is provided by section 8993, Revised Codes 1921, that "the compensation of an attorney and counselor for his services is governed by agreement, express or implied, which is not restrained by law." The same declaration is reiterated in section 9786, with an exception there stated pertaining only to probate proceedings with which we are here in no manner concerned, also the phrase "which is not restrained by law" is absent.

This court in the case of *Coleman* v. *Sisson*, 71 Mont. 435, 230 Pac. 582, 584, said with reference to these two sections; "The effect of these provisions is to abolish the common-law doctrine of champerty and maintenance in this state relating to contracts for compensation between attorney and client, except in so far as it is retained in modified form in sections 8980 and 8981 * * * as Mr. Chief Justice Brantly observed in *Haley* v. *Hollenback*, 53 Mont. 494, 165 Pac. 459. The purpose of sections 8993 and 9786 above adverted to was to place the lawyer upon the same footing as other persons, free to make his engagements with his clients as they should agree; or, in other words, to give to them the same freedom to contract as is enjoyed by others of the business world." Sections 8980 and 8981, mentioned in the foregoing quotation, are clearly without application to the facts under consideration.

The special investigator places no reliance upon any of these sections. His conclusion is based upon section 4, Chapter 139, Laws of 1931, wherein section 2953, Revised Codes 1921, was amended. Prior to this amendment that section provided, in substance, for the preservation of the record of all hearings and proceedings before the Industrial Accident Board, the right of the parties to be heard in person or by attorney, and the enumeration of the documents and papers constituting the record of the board. The amendment was inserted immediately following the provision relating to the right of the parties to be present and heard in person or by attorney. It is in the following language: "And the board shall have the power to fix and determine the amount of attorney's fees to be allowed in all proceedings where an attorney appears for either party." He cites numerous cases under legislative enactments of sister states, wherein the courts have held contracts between attorneys and injured workmen for the payment of compensation to be invalid and void. We will briefly review these cases.

The cases of *Sarja* v. *Pittsburg Steel & Ore Co.*, 134 Minn. 217, 191 N. W. 742, and *Blair* v. *Coleraine*, 180 Minn. 388, 231 N. W. 193, 69 A. L. R. 1315, construed the Minnesota statute (Gen. Stats. 1923, sec. 4267) which reads: "No claim for legal services * * * under the provisions of this Act shall be * * * valid or binding * * * unless the same be approved in writing by the judge presiding at the trial."

In the case of *Rawlings* v. *Workmen's Compensation Board*, 187 Ky. 308, 218 S. W. 985, the Kentucky statute (Ky. Stats. Supp. 1918, sec. 4942) considered provides that "all fees of attorneys * * * shall be subject to the approval of the board." It was there held that this statutory provision gave the board the power to limit the fees of attorneys.

In *May* v. *Hoertz & Son*, 204 Mich. 432, 170 N. W. 305, the statute was the same as that of Kentucky, and it was there held to warrant a judgment for the excess paid over the amount fixed by the board as against an attorney.

In the cases of *Blythe* v. *Askew*, 2 La. App. 415, and *Jones* v. *Louisiana Lumber Co.*, 2 La. App. 260, the Louisiana statute

provided that the fee shall be "reasonable" and approved by the court, but fixed the maximum at one-third of the award. These cases merely held that a contract for more than the one-third, is void as to the excess, whether approved by the court or not, and that the claimant might recover back any excess paid.

In the case of *Mickens* v. *Lawrence Paper Co.*, 130 Kan. 149, 285 Pac. 624, the court held that the statute providing that the contract is subject to the approval of the board, permits fixing of the fee, and this Act constitutes "a modification of the contract made."

In *Gritta's Case*, 241 Mass. 525, 135 N. E. 874, the statute was the same as that of Kansas, and it was held that it warranted a judgment for the return of the excess paid.

In *McCahan Sugar Ref. Co.* v. *Norton*, (D. C.) 34 Fed. (2d) 499, the federal court had under consideration a statute giving the commission power to award attorneys' fees against the employer; hence it was held that the contract with the employee or his widow would be of no effect.

In Nebraska the statute (Comp. Stats. 1922, sec. 3031) provides: "No contract for attorney's fees shall be valid unless approved by the district court." In the case of *Dysart* v. *Yeiser*, 110 Neb. 65, 192 N. W. 953, an attorney withheld under a contract $620 in excess of the fee fixed by the court. This excess was held to be recoverable in a civil action, and the court ordered repayment within sixty days on penalty of suspension of the right to practice law until the further order of the court. On appeal to the supreme court of the United States it was held that this Nebraska Act was not in violation of the Fourteenth Amendment. (267 U. S. 540, 45 Sup. Ct. 399, 69 L. Ed. 775.)

The New York statute provides that a contract between an injured workman and his attorney for compensation is unenforceable. In the case of *In re Fisch*, 188 App. Div. 525, 177 N. Y. Supp. 338, the attorney secured a contract for 40 per cent. of the award to the injured workman. In the midst of the proceeding seeking compensation the attorney discovered

the statute and refused to proceed unless his fee was guaranteed. The brother of the claimant guaranteed it in writing. Forty per cent. of the award was retained by the attorney. The court held that the statute was for the protection of the claimant against overcharge, and that the action of the attorney was a palpable evasion of the great purpose of the Act and could not be countenanced; that the attorney's action rendered discipline proper, but that as this was the first interpretation to that effect, the court would not inflict any punishment, but merely admonished the bar as to future conduct by its members.

It will be noted that in all the cases reviewed the statutory provision under consideration either by express language condemned a contract between an attorney and an employee seeking compensation as being unenforceable or void, or it provided that such contracts are subject to the approval of the court or board. No such language appears in our statutory provision. No provision appears in the original Compensation Act or any of the numerous amendments, except the one in question, which makes any reference to attorneys' fees.

It will be noted, from an examination of the authorities which we have herein briefly reviewed and others, that the purpose of enacting the statutes there considered was for the protection of the injured workman, to prevent attorneys from exacting unconscionable contracts from such workman. The amendment here being considered cannot be construed as one designed for that purpose alone, for the reason that the amount of the attorneys' fees is to be allowed in all proceedings where an attorney appears for either party. The Act is silent as to in whose favor the fees are to be allowed, whether in favor of the claimant or his attorney does not appear. Nor does it appear against whom it is to be allowed—the employer or some fund—and under the provision attorneys' fees are to be allowed for the employer's attorney, but it is silent as to whether they are to be allowed against the employer, the fund or the injured employee.

We have in our statutory law a number of provisions for the allowance of attorneys' fees, but in all of them the fee is al-

lowed as against a fund or a party to a proceeding, usually as costs. Section 6544, Revised Codes 1921, provides that the court in actions brought to recover for injury to or death of livestock by railroads, in certain instances the court shall "tax, as a part of the costs therein, a reasonable sum, to be fixed by the court, as a fee to the attorney of the prevailing or successful party for conducting such action, which said fee so fixed and allowed shall be collected in like manner as other costs." Under that statute the obligation to pay the attorney's fees runs to the prevailing party and not to the attorney who has successfully prosecuted the action. (*Vaill* v. *Northern Pac. Ry. Co.*, 66 Mont. 301, 213 Pac. 446.)

The obligation created by the execution of a note providing for the payment of attorneys' fees is in favor of the holder of the note, and not the attorney prosecuting an action for the collection of the note. (*National Park Bank* v. *American Brewing Co.*, 79 Mont. 542, 257 Pac. 436.)

Section 9798, Revised Codes 1921, provides that "in an action to foreclose a mortgage or pledge, the court must allow as a part of the costs a reasonable attorney's fee, which shall be fixed by the court." Chapter 69, Laws of 1925, provides that in actions to foreclose certain liens the court must allow as costs a reasonable attorney fee in the district and supreme courts in favor of the prevailing party. Section 9786, Id., provides that in probate proceedings the court must fix and allow the compensation of attorneys representing executors, administrators, guardians and trustees, and agents appointed by the court. The effect of that provision was held, in the case of *In re McLure's Estate*, 68 Mont. 556, 220 Pac. 527, to empower the court to determine the amount of the attorneys' fees and order the amount set apart out of the funds of the estate under its control for the use of the attorney.

In all of these provisions of our statutes the attorneys' fees are allowed against, in the case of an estate, the funds of the estate, and in the case of other actions in favor of one party against the other as costs. From those statutes it appears that

one party shall be allowed an attorney's fee as against the other.

Under the amendment of section 2953, in question here, the Industrial Accident Board is directed to fix and determine the attorneys' fees when either party appears by attorney. As against whom or what fund the allowance is to be made does not appear. Certainly, if the employer appears by attorney it is the duty of the board to allow an attorney's fee. No one would say that the allowance should be in favor of the employer or his attorney against the industrial accident fund. If both the claimant and the employer are represented by attorneys at a hearing before the board, the board must allow attorneys' fees, but in whose favor—the parties or their attorneys? And as against what or whom—the industrial accident fund, or the employer or the employee, or both?

If an Act of the legislature is so vague and uncertain in its terms as to convey no meaning, or if the means of carrying out its provisions are not adequate or effective, it is incumbent upon the courts to declare it void and inoperative. (*Hilburn* v. *St. Paul, M. & M. Ry. Co.*, 23 Mont. 229, 58 Pac. 551, 811; *State ex rel. Holliday* v. *O'Leary*, 43 Mont. 157, 115 Pac. 204; *H. Earl Clack Co.* v. *Public Service Commission*, 94 Mont. 488, 22 Pac. (2d) 1056. See, also, *Vennekolt* v. *Lutey*, 96 Mont. 72, 28 Pac. (2d) 452; *Mills* v. *State Board of Equalization*, ante, p. 13, 33 Pac. (2d) 563.)

The amendment is so vague and uncertain that we are compelled to declare it inoperative. If the legislature was desirous of regulating the fees of attorneys representing injured workmen before the Industrial Accident Board and the courts, it failed to accomplish its purpose. The injured workman is often without funds or credit to enforce his claim for compensation. While it was contemplated by the legislature that the procedure before the board was to be free from technicalities and the niceties of ordinary legal procedure so that the injured workman would need no attorney (*Williams* v. *Anaconda Copper Min. Co.*, 96 Mont. 204, 29 Pac. (2d) 649), cases will, however, arise from time to time, as this one, which is within

the class where it is essential and necessary that he secure the services of competent and skilled attorneys in order to secure the compensation to which he is justly entitled. Likewise, where he is without funds, and in order to enable him properly to present his claim it is necessary for him to secure the services of physicians, and their services must be paid for or their compensation guaranteed by someone other than the claimant. If the legislature in its wisdom determines that contracts between attorneys and injured workmen should be the subject of statutory regulation, the field of American statutory law furnishes many tried and workable statutes, as is illustrated by the discussion of the statutes and decisions, supra.

Under the existing state of our law, the accused were free to contract with Breeden. The payments or money retained was without protest or objection on the part of Breeden. We are not called upon to express an opinion as to the reasonableness of the charges made.

It appearing that under the state of the law as applied to the facts in this case the charges against Mr. Maury and Mr. Shone cannot be sustained to the point warranting disciplinary action on the part of this court, therefore the motion of the Attorney General is granted and the proceeding accordingly dismissed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS and STEWART concur.

MR. JUSTICE ANGSTMAN, being absent, takes no part in the foregoing opinion.