377 S.E.2d 485

The COMMITTEE ON LEGAL ETHICS OF THE WEST VIRGINIA STATE BAR

v.

James H. COLEMAN, a Member of the West Virginia State Bar.

No. 18496.

Supreme Court of Appeals of West Virginia.

Dec. 9, 1988.

Jack H. Marden, Charleston, Cynthia Santoro Gustke, West Virginia State Bar, for appellant.

Victor A. Barone, Charleston, for appellee.

McHUGH, Chief Justice:

This case raises initially the question of whether the workers' compensation statute limiting an attorney's fee is applicable to an award of permanent total disability benefits in such a manner that the accrued benefits are not a separate award from the future benefits. Should we answer that question in the affirmative, the second question raised in this case is whether an attorney is subject to discipline for charging and collecting "an illegal or clearly excessive fee" when the attorney has in good faith interpreted the aforementioned statute as authorizing separate attorney's fees for the accrued benefits and the future benefits involved in a permanent total disability award.

I

Charles Barnhouse sustained an injury in the course of his employment (he fell and injured his feet when a scaffold collapsed). Mr. Barnhouse retained the respondent, James H. Coleman, as his attorney to represent him in his workers' compensation claim. Mr. Barnhouse agreed in his contract with the respondent to pay the respondent the maximum attorney's fees authorized by *W.Va.Code*, 23-5-5 [1975]. That statute provides for a maximum contingent attorney's fee of twenty percent of any award, not to exceed twenty percent of the benefits to be paid during a period of 208 weeks.[1] Over several years of representation of Mr. Barnhouse, beginning in 1979, the respondent assisted in obtaining four administrative determinations of progressively larger percentages (the last being fifty percent) of permanent partial disability ("PPD"). For each new PPD award the respondent received a fee based upon twenty percent of the new benefits. These fees are not at issue. At least an eighty-five percent disability rating is necessary

---

**1.** The current and herein applicable version of *W.Va.Code*, 23-5-5 was last amended in 1975. It reads in relevant part as follows:

On or after the first day of July, one thousand nine hundred seventy-five, no attorney's fee in excess of twenty percent of any award granted shall be charged or received by an attorney for a claimant or dependent. In no case shall the fee received by the attorney of such claimant or dependent be in excess of twenty percent of the benefits to be paid during a period of two hundred eight weeks.

This section shall not apply to any contract for legal services made prior to the first day of July, one thousand nine hundred seventy-five.... [A]ny contract entered into in excess of twenty percent of the benefits to be paid during a period of two hundred eight weeks, as herein provided, shall be unlawful and unenforceable as contrary to the public policy of this State and any fee charged or received by an attorney in violation thereof shall be deemed an unlawful practice and render the attorney subject to disciplinary action.

for an award of permanent total disability benefits.

Ultimately, in December, 1986, Mr. Barnhouse was found to be permanently and totally disabled. Accordingly, he was awarded accrued benefits, from the date of the last PPD award, of $28,968.00, covering a period of 172³/₇ weeks. He simultaneously was determined to be entitled to future benefits of $730.00 per month for life. In January, 1987, the respondent charged and withheld twenty percent of both the accrued benefits (172³/₇ weeks) and of the future benefits (limited to the first 208 weeks of future benefits, in light of *W. Va. Code*, 23–5–5 [1975]), for a total attorney's fee of $12,782.40, based upon a total of 380³/₇ weeks of benefits. This attorney's fee was collected from the $28,968.00 check for the accrued benefits. No attorney's fees will therefore be charged or collected from each workers' compensation check in the future in payment of the future benefits, also called a "life award."

Mr. Barnhouse had also applied for federal social security benefits. The Social Security Administration offsets against social security benefits the net workers' compensation benefits, that is, workers' compensation benefits reduced by attorney's fees. A representative of the Social Security Administration noticed that the respondent had charged and collected from Mr. Barnhouse an attorney's fee based upon twenty percent of more than 208 weeks of benefits.

Mr. Barnhouse subsequently filed a complaint against the respondent with the Committee on Legal Ethics of the West Virginia State Bar (the "Committee"), alleging a violation of Disciplinary Rule 2–106(A), that is, charging and collecting "an illegal or clearly excessive fee." [2] A for-

mal statement of charges was served upon the respondent in November, 1987.

A subcommittee conducted an evidentiary hearing. The evidence adduced discloses that a few attorneys in this State have a practice of calculating their fees for assistance in obtaining a permanent total disability award in the same manner as the respondent, that is, by considering the accrued benefits to be a separate award from the future benefits, specifically, an award subject only to the twenty percent limitation of the first sentence of *W. Va. Code*, 23–5–5 [1975], without the 208–week limitation of the second sentence of that statute. The second sentence of *W. Va. Code*, 23–5–5 [1975] is applicable to benefits "to be paid," suggesting, according to this view, future benefits only.[3] On the other hand, the evidence shows that most attorneys in this State limit their fees for the accrued and future benefits together as one award subject to the twenty percent and 208–week limitations. The record further indicates that none of the regulations promulgated by the Workers' Compensation Commission address the attorney's fee issue presented here.

The subcommittee concluded that the respondent had violated Disciplinary Rule 2–106(A) by basing his attorney's fee upon more than 208 weeks of workers' compensation benefits, contrary to the subcommittee's interpretation of *W. Va. Code*, 23–5–5 [1975].

The full Committee agreed with the subcommittee's conclusion and with the subcommittee's recommendations that the respondent's license to practice law be suspended for thirty days and that the respondent is to repay Mr. Barnhouse for the excessive amount of attorney's fees ($5,793.60), plus interest. The Committee

---

**2.** DR 2–106(A) of this State's *Code of Professional Responsibility* (1983), provides: "A lawyer shall not enter into an agreement for[,] charge, or collect an illegal or clearly excessive fee."

Effective January 1, 1989, the corresponding provision of Rule 1.5(a) of the *Rules of Professional Conduct,* adopted by this Court, states: "A lawyer's fee shall be reasonable."

**3.** The Court has also reviewed the brief of *amici curiae* Amos C. Wilson and James M. Robinson.

This brief of two other attorneys whose practice is primarily in the area of workers' compensation supports the respondent's interpretation of *W. Va. Code*, 23–5–5 [1975]. Complaints which are nearly identical to the complaint of the Committee herein against the respondent are pending before the Committee against the *amici curiae* herein.

urges this Court to impose these sanctions against the respondent.

## II

The 208-week limitation for the calculation of attorney's fees in workers' compensation cases was added to *W.Va.Code*, 23-5-5 in 1971.[4] This statute was amended in 1973[5] and 1975.[6] Under each of these three versions of the statute an attorney's fee calculation is hinged upon an "award" of benefits being granted. In *State ex rel. Magun v. Sharp*, 143 W.Va. 594, 598, 103 S.E.2d 792, 795 (1958), the Court, quoting *Black's Law Dictionary*, defined an "award" as " '[t]he decision or determination rendered by arbitrators or commissioners, or other private or extrajudicial deciders, upon a controversy submitted to them; also the writing or document embodying such decision.' " The Court therefore held that a final order of the State Workers' Compensation Commissioner allowing benefits to a dependent of a fatally injured worker was an "award" within the meaning of the statute of limitations applicable to an action for recovery of money founded upon, *inter alia*, an award. *See* syl. pt. 2 of *Magun*. The significance of *Magun* for our purposes here is that it focuses attention upon whether the benefits, upon which an attorney's fee is based, were allowed in a final determination "upon a controversy," in which case one "award" is involved and one attorney's fee is authorized.

Our opinion in *Hinerman v. Levin*, 172 W.Va. 777, 310 S.E.2d 843 (1983), stresses that the attorney's fee limitation set forth in *W.Va.Code*, 23-5-5 [1975] is applicable to each final award. In that case the attorney represented the workers' compensation claimant initially as the attorney for the claimant's labor union and subsequently, under a separate attorney-client contract, as the workers' compensation claimant's personal attorney, to pursue an appeal of the disability rating (of a permanent partial disability of twenty percent). As counsel for the claimant's labor union, the attorney received a $600 fee from the union for representing the claimant. Thereafter, the attorney, as the claimant's personal attorney, succeeded in obtaining a permanent total disability award for the claimant, consisting of accrued or retroactive benefits and future or monthly benefits for life.

The workers' compensation claimant argued that the $600 attorney's fee received by the attorney from the claimant's labor union should be deducted from the maximum attorney's fee allowed by *W.Va.Code*, 23-5-5 [1975], which was incorporated into the attorney-client contract. This Court agreed. We stated: "The statute bars an attorney['s] fee in excess of twenty percent of 'any award granted'.... Despite the fact that appellee [the attorney] represent-

---

4. *W.Va.Code*, 23-5-5 [1971] states in pertinent part:

On or after July one, one thousand nine hundred seventy-one, no attorney's fee in excess of twenty-five percent of any award granted shall be charged or received by an attorney for a claimant or dependent. In the event of any award *to be paid for the remainder of the life* of the claimant or in the event of any award to a dependent of an employee, an attorney's fee shall not be charged or received by the attorney of such claimant or dependent in excess of twenty-five percent of the benefits *to be paid* during a period of two hundred eight weeks.

(emphasis by the respondent)

5. The relevant part of *W.Va.Code*, 23-5-5 [1973] provides:

On or after the first day of July, one thousand nine hundred seventy-one, no attorney's fee in excess of twenty-five percent of any

award granted shall be charged or received by an attorney for a claimant or dependent. In no case shall the fee received by the attorney of such claimant or dependent be in excess of twenty-five percent of the benefits *to be paid* during a period of two hundred eight weeks. This paragraph shall not apply to awards made prior to the first day of July, one thousand nine hundred seventy-one.... [A]ny contract entered into in excess of twenty-five percent of the benefits *to be paid* during a period of two hundred eight weeks, as herein provided, shall be unlawful and unenforceable as contrary to the public policy of this State and any fee charged or received by an attorney in violation thereof shall be deemed an unlawful practice and render the attorney subject to disciplinary action.

(emphasis by the respondent)

6. *See supra* note 1. In our opinion the "legislative history" of *W.Va.Code*, 23-5-5 is not illuminating in the context of this case.

ed the appellant [the workers' compensation claimant] pursuant to two separate contracts, all of his actions on the part of appellant were aimed toward the procurement of a single award." *Hinerman v. Levin*, 172 W.Va. 777, 785, 310 S.E.2d 843, 851 (1983). Syllabus point 6 of that case provides, in pertinent part, that *W.Va. Code*, 23–5–5 [1975] "requires that an attorney's fee ... shall not exceed twenty percent (20%) of the claimant's recovery during a period of two hundred eight weeks.... This limitation applies to the litigation ... up to the rendition of a final order, but does not apply to ... reopenings, that ... involve the full litigation of a new case." In the latter instance, "[i]f a separate award is given to the claimant, the attorney may receive the agreed additional payment for his [or her] services ... up to the statutory limit." *Id.*

*Hinerman v. Levin* did *not* discuss whether the accrued or retroactive benefits and the future or monthly benefits included in the permanent total disability award were separate "awards." The language and logic of that case, as well as the definition of "award" in *State ex rel. Magun v. Sharp*, lead, however, to the conclusion that they are not separate awards justifying separate attorney's fee limitations. One litigation effort, involving one controversy and resulting in one determination in one document, provided both the accrued and future benefit portions of the permanent total disability award.

In *Willingham v. Kral Music, Inc.*, 505 A.2d 34, 36 (Del.Super.Ct.1985), *aff'd without opinion*, 508 A.2d 72 (Del.1986), the court held that an "award of compensation," upon which a workers' compensation claimant's attorney's fee is based, refers to any "favorable change of position or bene-

fit" as the result of a final administrative decision. In the situation before us, an award of permanent total disability benefits consists of accrued and future benefits obtained simultaneously in one litigation effort, as opposed to being obtained in separate litigation efforts resulting in a "favorable change of position or benefit" from a previously obtained position or benefit.

■ Accordingly, this Court holds that under *W.Va.Code*, 23–5–5 [1975], an attorney's fee for assisting a workers' compensation claimant in obtaining a permanent total disability award, consisting of accrued and future benefits, is not to exceed twenty percent of the accrued and future benefits together as one award subject to the 208-week limitation.[7]

## III

Our interpretation, set forth above, of the attorney's fee limitation statute, *W.Va. Code*, 23–5–5 [1975], in the context of a permanent total disability award, leads to the conclusion that the respondent's fee herein was in excess of the statutory limit. The next issue is what, if any, professional discipline is appropriate in this case for violation of this statute by the respondent.

As discussed previously, the respondent and a few other attorneys in this State, without guidance from the Workers' Compensation Commission, have interpreted *W.Va.Code*, 23–5–5 [1975], *see supra* note 1, in the following manner. Their argument is that the *first* sentence of that statute, containing an attorney's fee limitation of twenty percent of any award granted, but not containing a limitation based upon 208 weeks of benefits, is applicable to the accrued benefit portion of a permanent total disability award. Their argument is

---

7. We believe these comments from *Hinerman v. Levin*, 172 W.Va. 777, 785, 310 S.E.2d 843, 851 (1983), are equally applicable here:

[W]e cannot agree with appellee's assertion that the operation of this statutory limitation on fees unduly regulates the practice of law or that it will lead to a situation in which claimants will be unable to find able lawyers to represent them. The workers' compensation system as a whole is a creature of statute, and the legislature has an interest in assuring that

its statutory aim of compensating the injured is not frustrated by lawyers who siphon off excessive portions of the award as their fees. This is not to say that the legislature has carte blanche to set a cap on such fees; however, the case before us does not support an argument that attorneys who handle workers' compensation cases are impecunious. In fact, our observation of the system as a whole simply does not lend credence to such a claim.

that the *second* sentence of that statute, containing the attorney's fee limitation based upon twenty percent of benefits "to be paid" during a 208–week period, is applicable only to the future benefit portion of a permanent total disability award. Otherwise, they argue, the first sentence of the statute is surplusage in the sense of being a shorter statement of the second sentence of the statute.

While this Court disagrees with this analysis of the statute, we believe that the statute is ambiguous and that the respondent's interpretation, although erroneous, was in good faith.

In a somewhat analogous situation, involving a disciplinary proceeding against a magistrate who had relied in good faith upon the advice of a public official, this Court held in syllabus point 5 of *In re Vandelinde*, 179 W.Va. 183, 366 S.E.2d 631 (1988): "Where a statute is clear and unambiguous, the oral advice of a public official cannot contravene the plain meaning of such statute." Rather than dismissing the ethics complaint, as per the recommended disposition, we, instead, issued a public reprimand, the least severe discipline, because the statute in question was clear and unambiguous. This Court concluded that the good faith reliance on the "interpretation" of the statute did not interpose a complete bar to discipline, in light of the clarity of the statute. On the other hand, we determined that the good faith reliance was to be considered as a mitigating factor in determining the appropriate disposition of the disciplinary proceeding. *Vandelinde*, 179 W.Va. at 190, 366 S.E.2d at 638.

■ It follows from *Vandelinde* that an attorney's good faith interpretation of an *ambiguous* fee-limiting statute, such as *W.Va.Code*, 23–5–5 [1975], is a bar to discipline based upon a complaint that the attorney has violated that statute and has, therefore, allegedly charged and collected "an illegal or clearly excessive fee."

Similarly, the Court, in *West Virginia Judicial Inquiry Commission v. Casto*, 163 W.Va. 661, 263 S.E.2d 79 (1979), dismissed an ethics complaint against a magistrate which was based upon his alleged failure to be faithful to the law. The Court relied upon the fact that the magistrate, while indeed failing to comply with the law, "sought to comply faithfully with the duties he understood the law to impose upon him." *Id.* 163 W.Va. at 667, 263 S.E.2d at 83. The conduct in question, involving legal error, was "merely erroneous [and was] not committed in bad faith[.]" *Id.* 163 W.Va. at 668, 263 S.E.2d at 83. The same is true here.

The rationale of *Vandelinde* and *Casto* with respect to the good faith of an individual charged with an ethics violation involving the failure to comply with the law is consistent with the definition of a "clearly excessive" attorney's fee set forth in disciplinary rules and with the disposition in cases from other jurisdictions involving an allegedly "illegal or clearly excessive fee."

■ Disciplinary Rule 2–106(B) defines a "clearly excessive" attorney's fee: "A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee." One of the factors to be considered in determining the reasonableness of an attorney's fee is "[t]he fee customarily charged in the locality for similar legal services." DR 2–106(B)(3). Here, due to the ambiguity of *W.Va.Code*, 23–5–5 [1975], we believe that prior to this opinion a lawyer of ordinary prudence would *not* have been left with a "definite and firm conviction" that separate attorney's fees for the accrued and future benefit portions of a permanent total disability award was improper or excessive.

As to the customary fee in the locality, the respondent's method of calculation is the definite minority view. However, two factors in addition to statutory ambiguity weigh against the imposition of disciplinary sanctions in this particular case. First, no one with the Workers' Compensation Commission had ever told the respondent that his method of calculating attorney's fees in permanent total disability cases was incorrect. Second, in response to a prior complaint by another client against the respondent which was identical to the complaint

at issue here, the Committee had, in September, 1984, decided that no ethical violation had occurred and communicated that decision to the respondent. Without embarking upon a discussion of whether the Committee was estopped by its prior dismissal of an identical complaint, this Court believes that such dismissal, combined with the statutory ambiguity and lack of intent to violate the statute, preclude discipline here.

Precedents from other jurisdictions are helpful in deciding whether an attorney's fee is "an illegal or clearly excessive fee." The attorney was not disciplined in *In re Fisch*, 188 A.D. 525, 177 N.Y.S. 338 (1919). There the workers' compensation statute required the workers' compensation commission to approve a claimant's attorney's fee. The attorney for the claimant and the claimant's brother entered into a written contract in which the claimant's brother promised to pay the claimant's attorney an attorney's fee of fifty percent of any workers' compensation award. The claimant was awarded $864.90 and the claimant's attorney was allowed a fee of $150 by the commission. The latter was not aware of the contract for the claimant's brother to pay the attorney's fee mentioned above. The attorney insisted upon enforcement of that contract for payment of his services. In the subsequent disciplinary proceeding against the attorney for attempting to evade the workers' compensation statute on attorney's fees, the court declined to impose any disciplinary sanctions. The opinion emphasized first that there was no deceit or concealment practiced by the attorney and second the fact that the case was the first of its kind to come before the court. Finally, the court issued a warning to the bar that disciplinary sanctions would be imposed in the future on similar facts.

A workers' compensation statute on attorney's fees was also involved in a disciplinary proceeding against attorneys in *In re Maury*, 97 Mont. 316, 34 P.2d 380 (1934). The holding in that case was that no disciplinary sanctions against the attorneys would be imposed because the statute authorizing the Industrial Accident Board to fix attorney's fees was vague (as to the identity of the person(s) or fund liable for such fees).

*In re Lempesis*, 293 S.C. 510, 362 S.E.2d 10 (1987), was a case in which disciplinary sanctions were sought against an attorney for, *inter alia*, charging and collecting an illegal or clearly excessive fee. A statute allowed a twenty-five percent contingent fee to attorneys. The respondent attorney in good faith believed that the fee-limiting statute applied only to representation at trial and that an additional fee was proper for handling an appeal. The court disagreed with the attorney's interpretation of the statute, but as to this complaint against the attorney the court concluded that the "appropriate resolution" was for the attorney to repay to the client the amount of the fee in excess of the statutory limit. The attorney was publicly reprimanded and disbarred, respectively, for other, unrelated charges.

Other cases also hold that an attorney's fee is not "an illegal or clearly excessive fee" or an unconscionable fee, for the purpose of imposing disciplinary sanctions, when the attorney charges the fee in good faith or conscientiously. *See, e.g., Grievance Committee v. Ennis*, 84 Conn. 594, 605, 607, 80 A. 767, 770, 771 (1911) (no disciplinary sanction imposed for excessive contingent fee; excess to be repaid to client); *In re Greer*, 61 Wash.2d 741, 749–50, 380 P.2d 482, 487 (1963) (en banc) (recognizing principle; attorney reprimanded for collecting completely unearned contingent fees).

Like the latter case, other cases in which disciplinary sanctions were imposed for charging or collecting an illegal or clearly excessive attorney's fee involve circumstances indicating the attorney's bad faith or intent to evade a fee-limiting statute. *See, e.g., In re Adams*, 293 Or. 727, 652 P.2d 787 (1982) (workers' compensation claimant's attorney attempted to evade fee-limiting statute by claiming additional work was necessary; evidence as to claimed additional work was unconvincing; attorney's license to practice law suspended for sixty days for charging clearly excessive fee and for other conduct inimical to client); *Hu-*

dock v. Virginia State Bar, 233 Va. 390, 355 S.E.2d 601 (1987) (workers' compensation claimant's attorney attempted to evade fee-limiting statute by entering into secret contingent-fee contract with client; statute was clear and under it Industrial Commission approves and awards attorney's fees; attorney publicly reprimanded); *Committee on Legal Ethics v. Tatterson,* 177 W.Va. 356, 352 S.E.2d 107 (1986) (in absence of any real risk in obtaining life insurance proceeds for client, attorney's purportedly contingent fee which is grossly disproportionate to amount of work required is clearly excessive fee; attorney's license to practice law annulled in light of prior discipline). *See generally* annotation, *Attorney's Charging Excessive Fee as Ground for Disciplinary Action,* 11 A.L.R. 4th 133 (1982), especially § 16 on workers' compensation cases.

Based upon the foregoing discussion, we hold that where, as here, an attorney bases his or her fee upon a good faith interpretation of an ambiguous fee-limiting statute, the attorney's fee is not "an illegal or clearly excessive fee" under Disciplinary Rule 2–106(A), for the purpose of imposing disciplinary sanctions against the attorney.

■ This Court is aware of the language in *W.Va.Code,* 23–5–5 [1975] that "any fee charged or received by an attorney in violation thereof shall be deemed an unlawful practice and render the attorney subject to disciplinary action." We have repeatedly emphasized, however, that this Court, under the separation of powers doctrine, *W.Va. Const.* art. V, § 1, has the exclusive regulatory power over the practice of law in this State,[8] including the discipline of attorneys, and legislative or administrative measures in this area will not be binding upon us. "The Judicial Branch may honor legislative enactments in aid of judicial power, but is clearly not bound to do so." *State ex rel. Quelch v. Daugherty,* 172

W.Va. 422, 424, 306 S.E.2d 233, 235 (1983). For the reasons set forth above, we have concluded that disciplinary sanctions are not appropriate under the circumstances herein. Sanctions in disciplinary proceedings are punitive in nature, and, therefore, ethical provisions should be strictly construed in favor of the party charged with violating the same. *See West Virginia Judicial Inquiry Commission v. Casto,* 163 W.Va. 661, 665, 263 S.E.2d 79, 81 (1979).

**IV**

■ On the other hand, this Court concludes that restitution of the portion of the attorney's fee in excess of the limit set by *W.Va.Code,* 23–5–5 [1975] is appropriate. That statute provides, in relevant part, that "any contract entered into in excess of twenty percent of the benefits to be paid during a period of two hundred eight weeks, as herein provided, shall be unlawful and unenforceable as contrary to the public policy of this State[.]" This language is consistent with the primary goal of disciplinary proceedings against attorneys. In syllabus point 3 of *Daily Gazette Co. v. Committee on Legal Ethics,* 174 W.Va. 359, 326 S.E.2d 705 (1984), we held: "The princip[al] purpose of attorney disciplinary proceedings is to safeguard the public's interest in the administration of justice." *See also* syl. pt. 6, *Committee on Legal Ethics v. Tatterson,* 177 W.Va. 356, 352 S.E.2d 107 (1986). Restitution of the excessive amount of the attorney's fee under the circumstances herein safeguards the public's interest in the administration of justice within the workers' compensation system.

Accordingly, we direct the respondent to repay to the complainant the sum of $5,793.60, with interest from January 2, 1987 until repaid, as recommended by the Committee.[9]

---

**8.** *See* syl., *Christie v. W.Va. Health Care Cost Review Authority,* 176 W.Va. 420, 345 S.E.2d 22 (1986); *Brammer v. Taylor,* 175 W.Va. 728, 733 n. 7, 338 S.E.2d 207, 212 n. 7 (1985), and cases cited therein.

**9.** This Court recognizes that the restitution to the complainant will, in the ordinary course of

events, enure to the benefit of the Social Security Administration because, as stated in section I of this opinion, the Social Security Administration offset against the complainant's social security benefits the net workers' compensation

We believe that the respondent should not be responsible for the costs of this disciplinary proceeding, in light of our decision not to impose any disciplinary sanctions.[10]

For the reasons set forth in section III of this opinion, the complaint against the respondent is dismissed.

COMPLAINT DISMISSED.

benefits, that is, workers' compensation benefits reduced by attorney's fees. A reduction of attorney's fees would increase the net workers' compensation benefits and, therefore, would increase the offset for social security purposes. The taxpaying public should, of course, be the ultimate beneficiary of reduced social security benefits.

10. This Court is aware of and perplexed by some of the actions of the assistant disciplinary counsel in this case, such as *soliciting* in writing at least one other complaint from another workers' compensation client of the respondent while this matter was pending and attempting to keep from us a complete record, including information pertaining to identical, pending complaints against other members of the Bar. We recognize the important and difficult role which disciplinary counsel serve, but we do not condone overly zealous prosecution by them.