391 S.E.2d 350

**Roy E. HICKS**

v.

**Amos C. WILSON.**

**No. 19137.**

Supreme Court of Appeals of
West Virginia.

Jan. 25, 1990.

Bradley J. Pyles, Crandall & Pyles, Logan, for Roy E. Hicks.

Michael J. Farrell, Susan Morton–Smith, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, for Amos C. Wilson.

NEELY, Chief Justice:

The plaintiff appeals the entry of summary judgment against him in this action against his former attorney to recover allegedly excessive legal fees in several workers' compensation claims.

Several decades ago, the plaintiff, Roy Hicks, was injured while serving in the armed forces. The Veterans Administration determined that Mr. Hicks had suffered a 40% permanent disability and made him an appropriate disability award. In 1959, Mr. Hicks was injured while an employee of Logan Concrete Industries. He was awarded a 7% permanent partial disability for that injury, raised to 15% after protest.

To re-open his claim, Mr. Hicks in 1963 retained Robert Phillips of the law firm of Hager & Phillips. In their written contract, Mr. Hicks agreed to pay the law firm "twenty-five percent of any and all awards of benefits to Claimant in this Claim while this contract is in effect." The contract purported to be terminable only by mutual agreement of the parties. Under the agreement, any award would go first to the lawyers, who would retain their fee and remit the balance to Mr. Hicks.

In 1964, the defendant, Amos Wilson, joined the Hager & Phillips firm. That year, Mr. Wilson and Mr. Phillips purchased the assets of Hager & Phillips and formed their own partnership, Phillips & Wilson. In 1966, Mr. Phillips died, and Mr. Wilson purchased the assets of their partnership. In 1965, Mr. Phillips had Mr. Hicks's case for the 1959 injury re-opened and his disability increased by 10%, to 25%. Mr. Wilson then took over the case, having the award increased by 10% in 1967 (to 35%), by 15% in 1970 (to 50%), by 10% in 1973 (to 60%), and by 5% in 1974 (to 65%).

In 1977, Mr. Wilson moved once again to have the case re-opened, to show that Mr. Hicks had a total permanent disability from the combined effect of the old war injury (40%) and the 1959 injury (65%). After delays and interim orders, the workers' compensation commissioner finally made a total disability award, payable from the commission's second injury fund, in 1982.

In 1982, a check covering back-due benefits was made to Mr. Wilson as attorney for Mr. Hicks, in the amount of $44,637.29. Mr. Wilson retained as his fee (exclusive of reimbursement for expenses) $16,381.94, or 36.7% of the back pay. Mr. Wilson calculated this as 25% of all past-due benefits ($11,157.32) and an additional 25% of benefits that would accrue in the next four years ($5224.62).

Maximum attorney fees for representing workers' compensation claimants are set out in *W. Va. Code*, 23–5–5 [1975]. The statute has been on the books since 1935 and has been amended many times, most recently in 1975. The statute provides:

On or after the first day of July, one thousand nine hundred seventy-five, no attorney's fee in excess of twenty percent of any award granted shall be charged or received by an attorney for a claimant or dependent. In no case shall the fee received by the attorney of such claimant or dependent be in excess of twenty percent of the benefits to be paid during a period of two hundred eight weeks. This section shall not apply to any contract for legal services made prior to the first day of July, one thousand nine hundred seventy-five: Provided, that the interest on disability or dependent benefits as provided for in this chapter shall not be considered as part of the award in determining any such attorney's fee. However, any contract entered into in excess of twenty percent of the benefits to be paid during a period of two hundred eight weeks, as herein provided, shall be unlawful and unenforceable as contrary to the public policy of this State and any fee charged or received by

an attorney in violation thereof shall be deemed an unlawful practice and render the attorney subject to disciplinary action.

Our decision in this case turns on the legislative history of that statute. The legislature in the 1970's responded to the evolving nature of law practice within the workers' compensation system. Through the 1960's, awards for workers were hard to win, and when claimants were successful, the awards were seldom generous. Since then a more equitable system has evolved. Furthermore, the use of computers and other new technology has streamlined the laborious record-keeping and overhead costs for lawyers in the workers' compensation field. Fee arrangements must be responsive to a legal system that is always in flux.

Before 1971, the statute did not limit the fee arrangements made between lawyer and claimant, but allowed the commissioner to pay only a fixed amount directly to the lawyer, up to $500 but no more than 25% of any award. *Acts of W.Va. Legislature,* 1949 Reg.Sess., Ch. 136; *Billingslea v. Tartell,* 127 W.Va. 750, 35 S.E.2d 89 (1945).

In 1971, the legislature amended the statute to impose an absolute limit on lawyers' fees: "[N]o attorney's fee in excess of [25%] of any award granted shall be charged or received by an attorney for a claimant or dependent." *Acts of W.Va. Legislature,* 1971 Reg.Sess., Ch. 177. The amendment also introduced a limit of 208 weeks for calculation of the fee for a life or dependent award. The amendment exempted only fee arrangements for *awards* made before the effective date of the amendment; there was no savings clause for existing contracts covering pending or future claims.

In 1973, the legislature further amended the statute to extend the 208–week limit to *all* awards, not just life or dependent awards. *Acts of W.Va. Legislature,* 1973 Reg.Sess., Ch. 141; *Committee on Legal Ethics v. Coleman,* 180 W.Va. 493, 377 S.E.2d 485 (1988). Again, the amendment exempted only *awards* made before the effective date of the amendment. In addi-

tion, the amendment declared all contracts to the contrary *"unlawful and unenforceable,"* even if the contracts were entered before the effective date of the amendment. There was no savings clause for existing contracts.

Before the 1975 amendment, therefore, all contractual provisions were void and unenforceable that purported to give a claimant's lawyer more than 25% of 208 weeks' worth of benefits. The only exemptions were for fees collected on *awards* made before the effective dates of the earlier amendments. The legislature's intent was to protect fee arrangements that were lawful at the time of the respective awards, but fees in pending or future claims would have to be lawful as of the date of the actual award. The pattern of the amendments was to tie each substantive change to a limited savings clause protecting awards already made, as the fee limits became progressively stricter.

The 1975 amendment, *Acts of W.Va. Legislature,* 1975 Reg.Sess., Ch. 215, contained two related changes. The allowable percentage was reduced from 25% of 208 weeks to 20% of 208 weeks, and there was inserted a "savings" clause exempting *contracts* entered before the effective date of the 1975 amendment (1 July 1975). The statute is not a model of clarity, but we may discern the legislature's intent by considering the pattern established in prior amendments. We conclude that the legislature intended to link the savings clause with the substantive change in the amendment, as it had done in prior amendments. The savings clause in 1975 was more generous, however; it exempted from the new limits not just fees legal when an earlier award was made, but *contracts* that might cover pending or future claims.

■ The 1973 amendment had already declared void and unenforceable any contract under which a lawyer took a percentage of more than 208 weeks worth of benefits. That time limit remained in force through 1975. It would be unreasonable to believe that the legislature intended somehow to revive, through the 1975 savings clause, contracts that had already been de-

clared void because they ran afoul of the time limitation. Rather, the legislature must have intended for the 1975 savings clause to refer to changes in 1975 that might make void a contract that would have been lawful before 1975. The only such change was the percentage change, from 25% to 20%.

In sum, we read the 1975 savings clause as ratifying, in effect, all contracts that would have been legal in 1974. The relevant group would include only contracts with a 208-week limitation, and a percentage between 20 and 25%, entered into before 1 July 1975.

■ As applied to the 1963 Hicks/Phillips contract, this means that the contract's provisions allowing a percentage fee beyond 208 weeks of benefits were unenforceable as of 1971, and remained so after 1975. The percentage recovery, however, remained in force. Thus, Mr. Wilson could have retained as his fee for work done from 1977 to 1982 up to 25% of 208 weeks of Mr. Hicks's award for past and future disability.

■ Mr. Wilson asserts that any reduction of his fee under the 1963 statute by subsequent statute violates the constitutional prohibition against the impairment of contracts. *U.S. Const.*, Art. I, § 10. We do not agree. It is settled law that impairment of existing contracts is not unconstitutional when the parties were on notice that the field in which they were contracting was subject to close regulation. As Mr. Justice Reed wrote for the U.S. Supreme Court, "When [one] purchase[s] into an enterprise already regulated in the particular to which he [later] objects, he purchase[s] subject to further legislation upon the same topic." *Veix v. Sixth Ward Association*, 310 U.S. 32, 38, 60 S.Ct. 792, 794, 84 L.Ed. 1061 (1940). The U.S. Supreme Court has also held that precisely the type of regulation challenged here—lawyer fees in state workers' compensation claims—does not violate the constitutional rights of the lawyer. *Yeiser v. Dysart*, 267 U.S. 540, 45 S.Ct. 399, 69 L.Ed. 775 (1925). We reach the same result under the test adopted by this Court for determining when there has been an unconstitutional impairment of contract:

In determining whether a Contract Clause violation has occurred, a three-step test is utilized. The initial inquiry is whether the statute has substantially impaired the contractual rights of the parties. If a substantial impairment is shown, the second step of the test is to determine whether there is a significant and legitimate public purpose behind the legislation. Finally, if a legitimate public purpose is demonstrated, the court must determine whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption.

Syllabus Point 4, *Shell v. Metropolitan Life Insurance Co.*, 181 W.Va. 16, 380 S.E.2d 183 (1989), following *Energy Reserves Group v. Kansas Power & Light Co.*, 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983). A finding of constitutionality is especially likely in the regulation of contracts for legal services, because lawyers, as officers of the courts and fiduciaries for their clients, have an ongoing obligation to charge only reasonable fees. Attorney/client contracts, especially those that provide for contingency fees, are always subject to the scrutiny of the courts. This special duty, independent of the police power of the state, arises out of the ancient strictures of legal ethics and the attorney/client relationship itself.

For the foregoing reasons, the judgment of the Circuit Court of Logan County is reversed and the case remanded for further proceedings consistent with this opinion.

Reversed and Remanded.